128 N.J. Super. 265 (1974)
319 A.2d 768
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
RICHARD HARAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 22, 1974.
Decided May 14, 1974.
*266 Before Judges CONFORD, HANDLER and MEANOR.
Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys for appellant (Mr. Samuel D. Lord, of counsel).
Messrs. Mandel, Wysoker, Sherman, Glassner, Weingartner & Feingold, attorneys for respondent (Mr. Harold A. Sherman, of counsel).
The opinion of the court was delivered by MEANOR, J.A.D.
Richard Haran, the defendant, was on May 29, 1972 an insured of plaintiff New Jersey Manufacturers Insurance Company (NJM) under an automobile *267 liability policy that contained uninsured motorists (UM) coverage. On that day Haran was in an automobile accident with one Henry Mason, an uninsured. Mason had a passenger in his car at the time of the accident, Henry Hodge.
Haran made claim under his uninsured motorists coverage for damages arising out of his own bodily injuries and automobile property damage. Hodge brought suit against Haran and Mason seeking damages on account of his personal injuries. NJM unsuccessfully sought from the Chancery Division a stay of arbitration between it and Haran until completion of the litigation begun by Hodge. NJM argued below and argues here that unless the arbitration is stayed it may be subjected to inconsistent results. The policy provisions involved are:

I. UNINSURED MOTORISTS COVERAGE
(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.
No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

* * * * * * * *

VI. ADDITIONAL CONDITIONS

* * * * * * * *

G. Arbitration.
If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, *268 then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.
NJM's position is that if Haran is successful in arbitration, but is held liable to Hodge in the personal injury action, it will be put in the position of paying Haran on the thesis that the sole negligence was Mason's and paying Hodge on the theory that Haran's negligence was a cause of the accident. NJM also asserts that such an eventuality would destroy its subrogation rights against Mason for collection of its payments to Haran. Then, too, there is a conflict of interests in the position of NJM. In arbitration its insured is an adversary, and NJM has an interest in establishing his fault in order to bar recovery. In the action at law Haran is being defended by NJM, which seeks a result that Haran is free from fault in order to exonerate him from any liability.
UM coverage must be included in every New Jersey automobile liability insurance policy. N.J.S.A. 17:28-1.1. This statute requires that the policy provisions under which UM coverage is provided be approved by the Commissioner of Insurance.[*] It is evident that the policy provisions approved by the Commissioner of Insurance involved here contain no attempt to deal with the problem of inconsistent results that might arise where both arbitration and litigation eventuate from the same accident.
*269 Even if the arbitration clause did not have the imprimatur of the Commissioner, it would be valid and enforceable under New Jersey law. N.J.S.A. 2A:24-1 et seq. See Poray v. Royal Globe Ins., Co., 90 N.J. Super. 454 (Law Div. 1966), and Annotation, "Uninsured motorist indorsement: Validity and enforceability of provision for binding arbitration, and waiver thereof," 24 A.L.R.3d 1325 (1969). We also note that arbitration is a judicially favored remedy. Public Utility Workers v. Public Service Co., 35 N.J. Super. 414, 419 (App. Div. 1955), certif. den. 19 N.J. 333 (1955); Keppler v. Terhune, 88 N.J. Super. 455 (App. Div. 1965). The issue now raised by NJM appears to be novel and not heretofore the subject of any reported case. For a discussion of arbitrable issues under UM endorsements, see Annotation, "What issues are arbitrable under arbitration provision of uninsured motorist insurance," 29 A.L.R.3d 328 (1970).
The arbitration provisions of the insurance contract would be frustrated if arbitration under the UM endorsement were enjoined every time a law suit arising out of the same occurrence was pending. Conflicting results are a potential every time multiple claims arise out of the same transaction. Available procedures for consolidation of litigation reduce but do not eliminate that potential. Instances of conflicting results are well within the experience of courts and trial attorneys. If one of several claims arising out of the same occurrence is brought early and reached quickly, that result may be in conflict with the outcome of litigation concluded later. Under such circumstances a court would be unlikely to honor a move to enjoin resolution of the early case to await consolidation with matters not yet begun. Here, the risk of conflicting results is inherent in the UM coverage just as it is in litigation. We could eliminate that risk only by frustrating the motives that underlie the inclusion of an arbitration clause  i.e., prompt, nonjudicial resolution of the dispute. Since we cannot eliminate all possibility of conflicting results in litigation, we decline as a matter of policy to undertake the attempt with respect to UM coverage.
*270 As to NJM's conflict of interests, it is essentially no different here from the conflict in which an insurer finds itself when it covers two insureds involved in the same accident. In this situation it is most appropriate if the insurer retains separate counsel for the arbitration and the litigation.
Affirmed.
NOTES
[*] At the time of issuance of the policy in question, UM coverage was required to be offered, but under the repealed N.J.S.A. 17:28-1.2 an insured could reject the coverage now mandatory under N.J.S.A. 17:28-1.1.