135 N.J. Super. 452 (1975)
343 A.2d 750
TRAVELERS INDEMNITY COMPANY, PLAINTIFF-APPELLANT,
v.
SUSAN MONGIOVI AND LOSS ADJUSTMENT CORP., INC., LEATHERBY INSURANCE CO. AND RUPERTA CASTRO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1974.
Decided June 3, 1975.
*453 Before Judges MATTHEWS, FRITZ and BOTTER.
Mr. Daniel J. Keenan argued the cause for appellant.
Mr. Benjamin L. Bendit argued the cause for respondent Susan Mongiovi (Messrs. Bendit, Weinstock & Sharbaugh, attorneys).
Mr. Leonard M. Goodman argued the cause for Respondents Loss Adjustment Corp., Inc. and Leatherby Insurance Co. (Messrs. Goodman & Lustgarten, attorneys).
The opinion of the court was delivered by BOTTER, J.A.D.
This is an appeal from the refusal of the trial judge to stay arbitration demanded by Susan Mongiovi of her insurer, Travelers Indemnity Company (Travelers), under an uninsured motorists endorsement (see N.J.S.A. 17:28-1.1) to her automobile insurance policy.
For the purposes of this action the following facts are not disputed. Mongiovi was sitting in her parked car on June 5, *454 1972 when it was struck by an automobile owned by Ruperta Castro and operated by Regustian C. Mendez. The Castro auto was insured by Leatherby Insurance Co. (Leatherby).
Mongiovi sued Castro for damages and her attorneys sent a copy of the summons and complaint to Leatherby. Thereafter Leatherby notified Castro that it was "expressly disclaiming all coverage under your policy 524326, because of your lack of cooperation." A copy of said disclaimer letter was sent to Mongiovi's attorneys, who, in turn, sent the letter to Travelers and informed Travelers that: "Since there has been a disclaimer, we are making claim under the Uninsured Motorist provisions of the Travelers Policy."
Travelers apparently resisted Mongiovi's claim, and Mongiovi's attorneys demanded arbitration by the American Arbitration Association. In response, Travelers filed the complaint in this action and, on October 5, 1973, obtained an order to show cause why the arbitration hearing should not be stayed. The complaint asserts that the Castro vehicle was not an "uninsured" vehicle at the time of the accident; that Leatherby cannot disclaim if it was not prejudiced by the lack of cooperation: that the coverage afforded to Mongiovi under her insurance policy must be judicially determined as a condition precedent to arbitration (see Visselli v. American Fidelity Co., 155 Conn. 622, 237 A.2d 561 (Sup. Ct. Err. 1967)), and that arbitration, pursuant to the endorsement, applies only to a dispute as to (a) the liability of the owner or operator of the Castro vehicle and/or (b) the amount of damages, if any. The complaint sought a stay of the arbitration, a determination of the "validity of the attempted disclaimer," a determination of Mongiovi's right to arbitration, and such other relief as may be appropriate.
The trial judge ruled that Mongiovi was entitled to pursue her claim for damages against Travelers. Accordingly, he refused to stay the arbitration proceeding. Implicit in this determination is the holding that the Castro vehicle was an "uninsured" vehicle within the meaning of *455 the uninsured motorists endorsement issued by Travelers to Mongiovi. It is from the order denying the stay of arbitration that Travelers has appealed, although the issue of Leatherby's right to disclaim has not been resolved in the lower court.[1]
The trial judge found that the right of Mongiovi to assert her claim for damages against Travelers in arbitration required a determination of whether "the notice of disclaimer rendered the Castro car uninsured." The trial judge applied the literal language of the policy endorsement and concluded that the uninsured motorists coverage could be invoked by Mongiovi since the endorsement defined an uninsured highway vehicle to include a vehicle insured by a company which "denies coverage" under its policy.
Since the Castro carrier denied coverage, "arbitration is available" to Mongiovi, the trial judge held. Also rejected was the contention of Travelers that Leatherby's right to disclaim must be adjudicated before Mongiovi can proceed with her claim against Travelers.
In our view, the disclaimer by Leatherby makes the Castro vehicle an "uninsured" vehicle within the meaning of the Travelers uninsured motorists endorsement. Therefore, Mongiovi can demand payment under that coverage without first concluding her claim against the driver of the Castro vehicle, and without Leatherby's right to disclaim having first been adjudicated.
*456 The insurance coverage afforded by the policy endorsement is defined therein as follows:
I. UNINSURED MOTORISTS COVERAGE
(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.
No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

Exclusions
This insurance does not apply:
(a) to bodily injury or property damage with respect to which the insured, his legal representatives or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor; * * *
An "uninsured highway vehicle" is defined as follows:
(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or * * * *457 but the term "uninsured highway vehicle" shall not include: (1) an insured highway vehicle, * * *. (Emphasis added.)
The literal language of the policy, as the trial court found, makes the Castro vehicle an "uninsured" vehicle for the purposes of the endorsement, since Castro's insurance company "denies coverage" under its policy. It is asserted, however, that the definition is ambiguous, since, by other terms, it excludes "an insured highway vehicle." Travelers contends that if it is determined that Leatherby had no right to disclaim, the Castro vehicle would remain an "insured" vehicle, and thus it would not be an "uninsured" vehicle.
Admitting some ambiguity, the first answer is to say that such ambiguity should be interpreted in favor of the insured and against the insurance company which drafted the policy endorsement. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970); Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305 (1965). However, it is not necessary to rely solely on this principle. The terms of this endorsement, when carefully analyzed, confirm that the result reached was probably intended by the draftsman, whatever laymen may have understood the endorsement to mean.
To start with, the literal terms are satisfied notwithstanding the apparent ambiguity. We know that Castro's insurance company "denies coverage" under the "insurance policy applicable at the time of the accident." We do not know whether the disclaimer will be legally effective; therefore, we do not know whether the Castro vehicle is or is not an "insured" vehicle with respect to this accident. For the purposes of this endorsement, then, it is clear that an uninsured vehicle includes a vehicle with an insurance policy at the time of the accident issued by a company which later "denies coverage thereunder." Such a vehicle cannot also be deemed an "insured" vehicle, since by previous definition it has been labeled an "uninsured" vehicle for the purposes of the policy.
*458 There is other language which supports this conclusion. Clause I, "Uninsured Motorists Coverage," first quoted above, provides that no judgment obtained by the insured against "any person or organization" liable to the insured for damages "shall be conclusive, as between the insured and the company [Travelers]" as to liability or damages "unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company." (Emphasis supplied.) Coverage is also excluded for personal injuries or property damage claims if the insured "without the written consent of the company" makes "any settlement" with the persons "legally liable therefor." These provisions prohibiting suit or settlement without consent of the insurer are said to be aimed at protecting the insurer "against multiple lawsuits in which its interests may be adversely affected without its being given adequate representation * * *." Annotation, "Uninsured Motorist Endorsement: validity and enforceability of provision for binding arbitration, and waiver thereof," 24 A.L.R.3d 1325, 1328 (1969). It is inconsistent to say that Mongiovi may not assert a claim under the Travelers uninsured motorists endorsement unless she has first litigated the validity of Leatherby's disclaimer, but that Mongiovi may not sue Castro or Leatherby without Travelers' written consent. Cf. Poray v. Royal Globe Ins. Co., 90 N.J. Super. 454, 461 (Law Div. 1966); Visselli v. American Fidelity Co., supra. In fact, retention of control over claims against others confirms the intent of the policy to permit both payment under the policy and the pursuit of claims against such persons who may be liable, notwithstanding the apparent lack of insurance coverage on another vehicle involved in the accident.
Thus the policy scheme allows Mongiovi to proceed against Travelers on the endorsement when Castro's insurer has disclaimed. Central Mut. Ins. Co. v. Espina, 208 So.2d 144 (Fla. App. 1968); St. Paul Mercury Ins. Co. *459 v. American Arbitration Ass'n, 425 Pa. 548, 229 A.2d 858 (Sup. Ct. 1967). Travelers retains control over Mongiovi's claims against Castro and her insurer, and Travelers will acquire Mongiovi's rights to said claims by subrogation upon payment of Mongiovi's damages. Id. To the extent that Kearny v. Chemical Leaman Lines Co., Inc., 122 N.J. Super. 438 (Law Div. 1973) holds otherwise, it is disapproved.
We agree with the contention of Travelers that the only issues subject to the endorsement's arbitration clause are liability (of the Castro vehicle) and damages (recoverable by Mongiovi). Visselli v. American Fidelity Co., supra; Hartford Accident & Indemn. Co. v. Travelers Ins. Co., 25 Conn. Sup. 414, 206 A. 2d 847 (Super. Ct. 1964). Leatherby's right to disclaim is not an issue for arbitration between Mongiovi and Travelers, but was properly made a subject of the within action. Having determined that Mongiovi may assert her claim under the uninsured motorists endorsement, arbitration can proceed, if needed, should Travelers and Mongiovi fail to agree on Mongiovi's right to damages and the amount thereof.
We affirm. Since the action below has not been concluded in all respects, the matter is remanded to the trial court.
FRITZ, J.A.D. (dissenting).
I am satisfied that the majority, like the trial judge, has by-passed the real issue presented on this appeal and, in the course of this journey, undertaken unnecessarily to decide too much. Accordingly, I respectfully dissent from their conclusion that arbitration can proceed (as they say "if needed") and refrain from an expression of view, as presently unnecessary and undesirable in a summary proceeding, as to whether a disclaimer always constitutes a vehicle "uninsured". The inevitability of this latter conclusion in the view of the majority, regardless of the bona fides of the disclaiming insurance company and the factual milieu of a given case, is apparent: *460 their determination in this regard sprang from the policy words uninfluenced by the facts here. While the logic of the contract construction is persuasive, I am not prepared to concur in this situation where I feel this far-reaching pronouncement is unnecessary.
The real remedy that was sought below was a stay of arbitration. The insured or uninsured status of the Castro vehicle has no relevance whatsoever unless it is a stepping stone to the ultimate determination of that primary issue. But the trial judge focused on a primal determination of the insured-uninsured status of Castro, and then concluded, as he put it, that "logically * * * arbitration is available." In this I think he was mistaken, for if this rule is sound, arbitration would be available in any case of an uninsured vehicle, whether by sound or unsound disclaimer or otherwise. Clearly such was not the intention of the parties with respect to the arbitration clause, a fact acknowledged by the majority in the penultimate paragraph of its opinion where it says:
We agree with the contention of Travelers that the only issues subject to the endorsement's arbitration clause are liability (of the Castro vehicle) and damages (recoverable by Mongiovi). * * * Leatherby's right to disclaim is not an issue for arbitration between Mongiovi and Travelers, but was properly made a subject of the within action. Having determined that Mongiovi may assert her claim under the uninsured motorists endorsement, arbitration can proceed, if needed, should Travelers and Mongiovi fail to agree on Mongiovi's right to damages and the amount thereof.
Indeed, that conclusion expresses my view as to the purpose of the arbitration clause and the reason I believe arbitration is not here available. This despite the fact that arbitration is a favored remedy, Keppler v. Terhune, 88 N.J. Super. 455 (App. Div. 1965), and doubts are to be resolved in favor of arbitration, Standard Oil, etc., Union v. Esso Research, etc., Co., 38 N.J. Super. 106 (App. Div. 1955), dec. on pet. for reh. 38 N.J. Super. 293 (App. Div. 1955), for the right to arbitration does not attach to a contract *461 except by express agreement between the parties and then only within the perimeters of that agreement. Keppler v. Terhune, supra, 88 N.J. Super. at 462. The parties are said to "have a right to stand upon the precise terms of their contract." Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1, 4 (E. & A. 1935).
In the uninsured motorist endorsement with which we are concerned, the arbitration clause in its entirety reads:
G. Arbitration.
If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.
It is to be seen from the plain language of this section that before arbitration is available, there must be a disagreement between Travelers and Mongiovi either as to (1) whether Mongiovi "is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle" (emphasis supplied), or as to (2) the "amount which may be owing under this insurance." It is to be noted that irrespective of the rights of Travelers and Mongiovi, either vis-a-vis or with respect to Castro or Leatherby, the arbitration clause is framed in terms of the liability of the owner or operator of the uninsured vehicle and not in terms of the responsibility of another carrier to indemnify that liability. The terms of the arbitration clause before us are succinct and concise and the agreement between the parties is clear. We overstep if we *462 "intrude" to rewrite "the language [the parties] employed in reducing their understanding to writing." Standard Oil, etc., Union, supra, 38 N.J. Super. at 114.
In the matter before us there is no disagreement at all between Travelers and Mongiovi as to the entitlement of the latter to recover damages from Castro. Not only does neither assert such a disagreement but Mongiovi's action against Castro speaks of her conviction in this regard and Travelers' announced concern for its subrogation right bespeaks its position. While it seems unlikely that there could be disagreement on the "amount of payment" which may be owing until such time as that is fixed, presumably by a trial of Mongiovi's suit against Castro, such a defense to payment by Travelers under its uninsured motorist clause has not been raised and thus will not serve to invoke the arbitration clause. It is to be seen, therefore, that regardless of whether Castro is deemed to be insured or uninsured, the arbitration clause does not in these circumstances require submission to arbitration. This conclusion has been reached in a majority of other jurisdictions which have considered the problem. See, for instance, Visselli v. American Fidelity Co., 155 Conn. 622, 237 A.2d 561 (Sup. Ct. Err. 1967); Western Casualty & Surety Co. v. Strange, 3 Mich. App. 733, 143 N.W. 2d 572 (Ct. App. 1966); Flood v. Country Mutual Ins. Co., 41 Ill.2d 91, 242 N.E.2d 149 (Sup. Ct. 1968); Murtaugh v. American States Ins. Co., 25 Ohio O.2d 106, 187 N.E.2d 518 (Ct. App. 1963); In Matter of Rosenbaum, 11 N.Y.2d 310, 229 N.Y.S.2d 375, 183 N.E.2d 667 (Ct. App. 1962); Motor Vehicle Accident Indem. Corp. v. Linder, 17 App. Div.2d 610, 230 N.Y.S.2d 372 (App. Div. 1962). But see, In re Zurich Ins. Co., 14 App. Div.2d 669, 219 N.Y.S.2d 748 (App. Div. 1961), decided prior to Rosenbaum, supra.
As is pointed out in Annotation, "What Issues Are Arbitrable Under Arbitration Provision of Uninsured Motorist Insurance," 29 A.L.R.3d 328 (1970) where the cases are collected, "a few jurisdictions" have held to the contrary. See, for instance, Great American Ins. Co. v. American Arbitration *463 Ass'n, 436 Pa. 370, 260 A.2d 769 (Sup. Ct. 1970). I believe this minority position represents unwarranted judicial intrusion in the contract relationship between the parties, unjustified by the expressed but improbable position that an arbitrator will decide the issue more promptly and more justly than a court. See Motor Vehicle Accident Indemnification v. Malone, 16 N.Y.2d 1027, 265 N.Y.S.2d 906, 213 N.E.2d 316 (Ct. App. 1965).
I am further persuaded that arbitration is unavailable by syllogistic logic: since the arbitration clause appears in the uninsured motorist endorsement, arbitration is not available if Castro is deemed insured. If he is deemed uninsured, there is nothing to arbitrate since, as the majority recognizes, only the issues of liability and the extent of damages may be subjected to arbitration. I have come full circle: Castro's status, insured or not, is irrelevant to arbitration.
Finally, as a matter of mutual intent between the contracting parties, it seems to me most unlikely that Mongiovi, when contracting with Travelers, intended that arbitrators should decide the vitality of an insurance contract between two strangers (to Mongiovi and Travelers) neither of which strangers was a party to the Mongiovi contract and neither of which could be bound by the arbitration.
The advantages of a denial of arbitration are clear. All parties can be brought together in one civil action adequately framed and processed, and all parties will be bound by the totally dispositive result. This expediency, coupled with justice, was the brilliant target of that referred to not so long ago as the "new Rules."
N.J. Manu. Ins. Co. v. Haran, 128 N.J. Super. 265 (App. Div. 1974), has been brought to our attention. The problem there considered is different from the one facing us.
I would reverse the order below and enjoin arbitration. In doing this, I would decide nothing else with respect to relative rights and duties between or among the insurance companies, their agents, or the individual parties and I would enter such judgment without prejudice to the pursuit of any *464 of these rights by any party in any appropriate forum excepting arbitration.
NOTES
[1] Travelers did not move for leave to appeal. R. 2:2-4. It is doubtful that Travelers may appeal as of right, as from a final judgment (R. 2:2-3; Keppler v. Terhune, 88 N.J. Super. 455, 461 (App. Div. 1965); Stiles v. Hammond, 21 N.J. Super. 237, 239 (App. Div. 1952)) without at least having moved for entry of a final judgment on the claims adjudicated by the court pursuant to R. 4:42-2. See Applestein v. United Board & Carton Corp., 35 N.J. 343, 350-352 (1961). Nevertheless, because of the time already consumed in this litigation, we have decided to deal with the issue on the merits. We also shun, for the same reason, the question of the propriety of using a summary action procedure (R. 4:67-1) rather than a declaratory judgment action to bring this issue before the court.