DAVID PARKS AND PATRICIA PARKS, PLAINTIFFS-RESPONDENTS, v. COLONIAL PENN INSURANCE COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT, v. INSURANCE COMPANY OF NORTH AMERICA, THIRD-PARTY DEFENDANT-RESPONDENT.

Argued September 26, 1983—Decided November 29, 1984.

*Martin L. Sisselman* argued the cause for appellant (*Joseph Buttafuoco*, attorney).

*Francis X. Crahay* argued the cause for respondent Insurance Company of North America (*Giordano, Halleran & Crahay*, attorneys; *Francis X. Crahay* and *Victor A. Rotolo*, on the brief).

*Ronald S. Levitt* submitted a letter in lieu of brief on behalf of respondents David Parks, et al. (*Newman, Herman, Saltman, Levitt and Feinson*, attorneys).

PER CURIAM.

We granted certification, 93 *N.J.* 270 (1983), to review the Appellate Division's affirmance, in an unreported opinion, of two judgments against Colonial Penn Insurance Company (Colonial Penn). The first judgment was entered on an order dismissing Colonial Penn's third-party complaint against Insurance Company of North America (INA). The second was a summary judgment in plaintiffs' suit against Colonial Penn. The result flowing from the rulings below is that the uninsured motorists (UM) endorsement (*N.J.S.A.* 17:28–1.1) of plaintiffs' automobile policy with Colonial Penn has been held to be operative and plaintiffs may proceed to arbitration of their claims against Colonial Penn. We reverse.

I

On April 30, 1977, plaintiff David Parks was a passenger in an automobile operated by Robert Ajamian and owned by Robert Skelton. INA was the liability insurer on the Skelton vehicle. Ajamian did not own any motor vehicle and was not an insured under any other automobile policy. Parks had his own automobile insurance policy with Colonial Penn. He suffered personal injuries when Ajamian drove the Skelton vehicle off the road and struck a house. He and his wife, plaintiff Patricia Parks, started suit against Ajamian and Skelton to recover on

account of personal injuries and *per quod* losses (reference henceforth will be to "plaintiff").

The complaint charged that at the time of the accident Ajamian was acting as the "agent, servant and/or employee" of Skelton. Skelton denied agency. In addition, the defendants filed cross-claims against each other, raising an issue that was irrelevant to any material issue in Parks's simple negligence action, namely, whether Ajamian was using Skelton's automobile with the latter's permission. We assume—as we must, in the absence of an adequate record on the point—that at some time INA communicated its refusal to defend Ajamian and disclaimed coverage for the accident, based on the asserted lack of permission for Ajamian to use the insured vehicle. Skelton, INA's named insured, was represented in the Parks trial by counsel assigned by INA. Ajamian was defended by a member of the Somerset-Sussex Legal Services Office.

The trial of Parks's personal injury suit proceeded on the liability issue only, the damage claim having been bifurcated. At the conclusion of the evidence the trial court granted plaintiff's motion for a directed verdict against defendant Ajamian, granted defendant Skelton's motion for judgment against plaintiff on the grounds of no agency, and granted defendant Skelton's motion for judgment on Ajamian's cross-claim for indemnification and contribution. As it stood, then, plaintiff had a judgment on the liability question against Ajamian alone, and Skelton was out of the case. Nevertheless, the trial court submitted to the jury, by way of special interrogatory, the entirely extraneous issue of Ajamian's permissive use of the Skelton vehicle. The jury responded that Skelton had given Ajamian neither express nor implied permission to use his car, and the trial court included in the judgment a paragraph to that effect.

Thereafter, Parks instituted an arbitration proceeding pursuant to the provisions of his automobile policy with Colonial Penn, alleging that Ajamian was without any coverage of his

own and that inasmuch as there was a judicial determination that Skelton had not given permission for Ajamian to use his car (a condition to INA's furnishing coverage to Ajamian), Ajamian was uninsured, wherefore Colonial Penn was obliged to afford coverage to plaintiff. Colonial Penn refused to arbitrate, claiming there was an issue as to INA's coverage. The skirmishing continued, with plaintiff commencing this action for a declaratory judgment that Colonial Penn had to arbitrate his claim. Colonial Penn in turn filed a third-party complaint against INA, seeking a declaration that INA's policy afforded coverage to both Skelton and Ajamian at the time of the accident. The trial court granted INA's motion to dismiss the third-party complaint, on the basis of the *res judicata* effect of the jury's answer to the special interrogatory in the earlier litigation. Parks then moved for summary judgment against Colonial Penn, which the trial court granted on the basis of collateral estoppel and *res judicata*. The Appellate Division affirmed, substantially for the reasons given by the trial court.

## II

The resolution of the appeal is dictated by the limited record before us, but there remain complex problems for future resolution. On the questions directly presented we conclude that the courts below erred (a) in finding that the permissive use question had been properly submitted to the jury and answered by its verdict, and (b) in giving effect to that answer through collateral estoppel and *res judicata*. In Parks's liability suit, the issue of whether Ajamian was driving Skelton's car with the owner's permission had no bearing on whether either of them was liable to Parks—save, of course, as the question may be subsumed by the issue of agency as between Ajamian and Skelton, and that issue was decided as a matter of law by the trial court, which concluded that there was no agency. Had that determination gone the other way, it would of necessity have included a finding of permissive use; but a conclusion of no agency decides nothing about permission to use the vehicle.

To the extent that the parties sought, with the trial court's permission and assistance, to litigate the permissive-use issue despite its lack of relevancy, they converted a straightforward negligence case into an insurance-coverage case—and this without the participation of a party who, as to the issue of coverage, was indispensable if it was to be bound by the determination, namely, Colonial Penn. Nobody in the Parks liability case was a privy of Colonial Penn—surely not Parks, to whom it is a matter of some indifference whether he be paid by INA or Colonial Penn, *see Motor Vehicle Accident Indem. Corp. v. National Grange Mut. Ins. Co.*, 19 *N.Y.*2d 115, 224 *N.E.*2d 869, 278 *N.Y.S.*2d 367 (1967),[1] and just as surely not Ajamian or Skelton, with neither of whom Colonial Penn enjoyed any relationship save possibly as a potential adversary in litigation. A fair application of doctrines of issue preclusion would not foreclose Colonial Penn's right to litigate the question of coverage under these circumstances.

■■ Having said that, we nevertheless recognize that there are strong arguments for policies of issue preclusion that will avoid multiplicity of litigation over the same issue. Yet it remains essential that the .party to be bound by the former adjudication have fair notice and be fairly represented in the prior proceeding. *Cf. Wunschel v. Jersey City*, 96 *N.J.* 651 (1984) (employee not bound by finding of employment status as to co-employee when employer's interest may be opposed to employee's). As we have indicated, we are not at all satisfied from this record that the interests of the claimant, Parks, were sufficiently co-extensive with those of the UM carrier, Colonial Penn, to justify issue preclusion under principles of collateral estoppel.

We do not discount the possibility that upon a fuller record issue preclusion might appropriately be invoked to prevent the

---

[1] At oral argument it was conceded that there was no issue of the inadequacy of coverage under either the liability or the UM provisions of the policies.

subsequent litigation of the issue of permissive use. For example, it is possible that in a different case the issue of agency could encompass the issue of permissive use, and a full presentation of all material facts bearing on agency could include as well all of the facts that would be relevant to the issue of permissive use. In that setting, positing a reasonable factual nexus between the directly-litigated issue of agency and the contingent issue of permission, a full presentation of all material evidence, and a careful explanation to the jury, it might be feasible to present the latter issue to the jury for its determination by means of a special interrogatory. *See Johnson v. Salem Corp.*, 97 *N.J.* 78 (1984).

In addition, it is quite possible that in an initial litigation of the liability claim, an injured claimant would have a sufficient stake—the amount of coverage, for instance—in a result that would secure the insurance coverage of the liability carrier rather than that of the uninsured motorist carrier and, consequently, would have an interest in perfecting a liability claim that established not only agency but permissive use as well. In that situation, there could be sufficient privity between the claimant and the UM carrier so that it would not be unfair to bind the latter to any jury determination of lack of permissive use. In any event, to avoid any question of procedural fairness, it should be possible to notify the UM insurance carrier of the pendency of the negligence case and the likelihood that the issue of permissive use implicating liability insurance coverage would be presented for determination. The UM carrier, given the opportunity to intervene or otherwise protect its interests, would then properly be bound by the jury's determination of that issue. These approaches would certainly further the salutary goals of consolidating the litigation of related controversies, *Crispin v. Volkswagenwerk, A.G.*, 96 *N.J.* 336 (1984), and avoiding inconsistent results, *Wunschel v. Jersey City, supra*, 96 *N.J.* 651.

We recommend the pursuit of such solutions. See *infra* at 50. With this appeal in the posture in which it comes to us, however, the judgments in favor of INA on Colonial Penn's third-party complaint and in plaintiff's favor ordering Colonial Penn to arbitrate the UM issues must be reversed. As a housekeeping matter the Court on its own motion directs that so much of the judgment in the Parks liability action as purports to adjudicate the question of Ajamian's permissive use of Skelton's vehicle be stricken.

### III

The more complex and provocative issue is that raised for the first time in Colonial Penn's petition for certification—that is, the viability of *Travelers Indem. Co. v. Mongiovi,* 135 *N.J.Super.* 452 (App.Div.1975). That case holds that under a UM endorsement that defines an uninsured vehicle as one as to which its insurer has disclaimed coverage, the insured may proceed to arbitration of his claim under the UM endorsement without there first being a determination of the third party's insurer's assertion of no coverage. Colonial Penn asks us to overrule *Mongiovi* and to adopt a policy "where there is a disclaimer by the liability carrier and a claim is made against an uninsured motorist carrier, favoring resolution of the coverage issue as to the liability prior to arbitration of the uninsured motorist claim or trial of the negligence action." It points to the argument of the dissenter in *Mongiovi,* who would have enjoined arbitration so that "[a]ll policies can be brought together in one civil action adequately framed and processed, and all parties will be bound by the totally dispositive result." 135 *N.J.Super.* at 463.

As is apparent from our discussion *supra* at 47–49, we applaud the aim of such a "one-stop" proceeding, *see Ohio Casualty Ins. Co. v. Benson,* 87 *N.J.* 191, 199 (1981). But the desired goal is elusive, and Colonial Penn makes no suggestion as to how to implement a single, all-encompassing proceeding in

the instant context any more than did the dissenting judge in *Mongiovi*. The tug between, on the one hand, honoring the contractual arrangement of plaintiff and his UM carrier for arbitration of their dispute and, on the other, the salutary policy favoring expeditious resolution of *all* claims involving *all* parties in one forum has long been of concern to the Court. See, *e.g., Crispin v. Volkswagenwerk, A.G., supra,* 96 *N.J.* at 343–44, and *id.* at 347–57 (Handler, J., concurring); *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 *N.J.* 550, 554–60 (1981); 1984 *Civil Judicial Conference Comm., Toward a Theory of Civil Case Management,* Appendix J: Report of Subcommittee on Committee on Compulsory Joinder of Parties (March 1, 1984). We are reluctant to reach out to decide the issue in this appeal, given this record, which comes to us on a summary disposition below and does not even include the Colonial Penn policy.

For the moment we go no further than to recognize that the *Mongiovi* holding represents one efficient way of getting compensation into the hands of an injured insured quickly, leaving it to the disputing carriers later to litigate the issue as to which of them must ultimately pay. As we have indicated, it may be that in an appropriate case we will consider a Rule that would require joinder of the UM carrier whenever a plaintiff sues the tortfeasor and the tortfeasor's purported carrier denies or disclaims coverage. In determining the "appropriateness" of such a case we will doubtless look to a fact situation in which the issue of permissive use is relatively clear and simple—not the intricate type so productive of the sort of controversy as has troubled this Court from time to time. See, *e.g., Motor Club Fire & Casualty Co. v. New Jersey Mfrs. Ins. Co.,* 73 *N.J.* 425 (1977).

Finally, we add the thought that the insurance industry would perform a significant public service—as well as help itself—were it to devise a procedure for resolution of coverage issues outside of the litigation arena. History tells us that the American Insurance Association, the Alliance of American Insurers, and the National Association of Independent Insurers

have all endorsed the principle of intercompany arbitration for the purpose of resolving certain coverage disputes. The ingenuity and resourcefulness of the industry should be brought to bear on the issue that underlies this case. At the least the insurance associations might apply for *amicus curiae* status in any future litigation raising the point.

## IV

The cause is remanded to the trial court for further proceedings consistent with this opinion. The trial court will determine whether the case is ripe for arbitration, as it appears to be, on the only remaining arbitrable issue: damages (Ajamian's liability to Parks having already been determined). If the UM provisions of the Colonial Penn policy, which we have not seen, are the same as those in the policy involved in *Mongiovi, supra,* 135 *N.J.Super.* at 456–57 (as was suggested at oral argument), then the arbitration may go forward—*not* on the basis of any notion of issue preclusion but because the policy dictates that course at the moment the liability carrier denies coverage. When the arbitration has been completed, the issue of coverage as posed by Colonial Penn's third-party complaint will await the outcome of the arbitration.

Judgments reversed, cause remanded.

SCHREIBER, J., concurring in part and dissenting in part.

Should an insurance carrier that has denied coverage in good faith be bound by an award of damages determined in arbitration proceedings to which it was not party or privy because the insurance carrier subsequently lost the coverage action? The majority's answer is yes. I would hold to the contrary. I believe it is unfair to bind the company when it has not had an opportunity to be heard. Furthermore, the procedure that now must be followed may impede the settlement of cases and conflict with the policy of encouraging the expeditious and just disposition of litigation.

The salient facts are as follows. Plaintiff David Parks was the owner of an automobile insured by Colonial Penn Insurance Company. He was injured while a passenger in an automobile owned by defendant Richard Skelton and operated by defendant Robert Ajamian. This vehicle was insured by the Insurance Company of North America (INA). INA denied coverage for Ajamian, asserting that he did not have Skelton's permission to drive the car. Ajamian had no other insurance.

The trial of Parks' action against Ajamian and Skelton was bifurcated. On the liability issue, the trial court resolved that Ajamian was responsible and that Skelton was not because of the absence of agency.

Two separate proceedings followed. First, Parks commenced an arbitration action against Colonial Penn, his own insurance company, in accordance with the uninsured motorist coverage terms of his insurance policy. Colonial Penn refused to arbitrate, alleging that the INA coverage issue had not been adjudicated. Parks then instituted this action against Colonial Penn seeking a declaratory judgment and an order compelling Colonial Penn to proceed with the arbitration. Colonial Penn, in turn, joined INA in a third-party complaint.

I agree with the majority that the liability trial did not preclude Colonial Penn from litigating the issue of whether INA's policy covered the defendant Ajamian. Colonial Penn was not a party to that proceeding and could not be said to be in privy with its insured Parks for that purpose. As the majority has said, "it remains essential that the party to be bound by the former adjudication have fair notice and be fairly represented in the prior proceeding." *Ante* at 47.

Unlike the majority, however, I maintain that the same sense of fairness should apply to INA; it should not be bound by a determination made in a proceeding to which it was not party or privy. The majority has ordered that Parks' arbitration on the damage issue should go forward without INA's representation and that the damages should be fixed and paid. The civil suit

between Colonial Penn and INA would be stayed until "the arbitration has been completed." *Ante* at 51. Then, if Colonial Penn prevails, INA would be bound by the damages theretofore determined in the Colonial Penn arbitration proceeding. There is no statutory, legal, or equitable basis justifying the preclusion of a party from being heard on the issue of damages for which it is to be held responsible—at least where, as here, INA clearly acted in good faith in denying coverage. Indeed, the jury's decision that Ajamian operated the automobile without the owner's permission indicates that INA was justified in declining coverage.

The procedure advocated by the majority may also be administratively unwise. I would judge that disposition of automobile accident litigation would be expedited if the insurance coverage question were resolved initially. That is most assuredly so in the absence of an agreement among the insurance companies and the plaintiff on a reasonable settlement figure.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*Concurring in part, dissenting in part*—Justice SCHREIBER—1.