256 N.J. Super. 691 (1991)
607 A.2d 1062
LAURA SHEVLIN, PLAINTIFF,
v.
PRUDENTIAL COMMERCIAL INSURANCE COMPANY AND RIDER INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division (Civil), Union County.
December 6, 1991.
John R. Lanza, Esq., (Thatcher & Lanza, Esqs.), for plaintiff.
Thomas P. Ford, Esq., for defendant Prudential.
Robert J. Aste, Esq., (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, Esqs.), for defendant Rider.
MENZA, J.S.C.
Defendant, Rider Insurance Company, moves for summary judgment. The plaintiff and the defendant, Prudential Commercial *692 Insurance Company, cross move for summary judgment.
The issue in this case is whether an insured may compel her insurer to arbitrate a claim for damages under an uninsured/underinsured motorist provision when the insured has already obtained a jury verdict on liability and damages.
This issue has not been decided by any court in New Jersey.
The facts are these: Plaintiff sustained injuries when a motorcycle in which she was a passenger and which was owned and operated by one Kenneth Licwenko, collided with an automobile owned by one Elizabeth Netherland. Netherland was uninsured. Licwenko was insured by the defendant Rider for $15,000 third party liability coverage, and $15,000 for both uninsured and underinsured motorist coverage.
Plaintiff, who was the owner of a passenger vehicle, was insured by defendant Prudential in the amount of $50,000 for both uninsured and underinsured motorist coverage, a total of $100,000.
Because of the extent of her injuries, plaintiff made a claim against Prudential under the uninsured and underinsured provisions of her policy.
At the same time, she instituted a civil action for her injuries against Licwenko and Netherland. Rider Insurance Co., as the insurer for Licwenko, tendered its $15,000.00 liability policy into court. Prudential then offered plaintiff a settlement in the sum of $90,000, $10,000 less than the $100,000 available to her under the combined uninsured and underinsured coverages. Plaintiff rejected this offer.
She then proceeded to trial against Licwenko and Netherland. The jury rendered a verdict in favor of the plaintiff in the sum of $55,000, assessing 50% liability against Licwenko and 50% liability against the uninsured, Netherland.
Several days after the verdict, plaintiff received a letter from Prudential, which was dated prior to the trial date, in which *693 Prudential memorialized the $90,000 settlement offer it had previously made. Plaintiff attempted to accept this offer, but Prudential being aware of the jury verdict, withdrew its offer to settle. It then made a new offer of $55,000.00, based on the jury verdict.
Plaintiff rejected Prudential's new offer and made a demand for arbitration as provided by the uninsured and underinsured provisions of her policy. Prudential refused to arbitrate.
Plaintiff now brings this action for a declaratory judgment in order to determine whether the parties are required to participate in arbitration proceedings so as to determine the questions of Licwenko's and Netherland's liability and plaintiff's damages.
The Prudential policy provides for arbitration. It states:
If we and a covered person do not agree:
1. Whether that person is legally entitled to recover damages under this endorsement; or
2. As to the amount of damages; either party may make a written demand for arbitration.
Plaintiff contends that she is entitled to arbitration under the terms of her insurance contract with Prudential, regardless of the fact that a jury has already determined the question of liability and damages. Defendant Rider supports plaintiff's contention.
Defendant Prudential's response is simply that the issues of liability and damages have been decided by a jury and there is, therefore, no need for arbitration in order to determine those very same questions.
The issue presented in this case is succinctly set forth in the treatise entitled, A Guide to Uninsured Motorist Coverage, A. Windiss (1969). Unfortunately, it only presents the question, not the answer. But the author does offer a clear and concise explanation of the problems both the insured and insurer encounter when the insured prosecutes his claim to judgment without the insurer's consent. The author states:

*694 The prosecution of an action against the uninsured motorist by the insured creates the possibility that the insurance company, if it likes the judgment, will be able to use this judgment  even without having intervened in the case  to foreclose the insured's right to an arbitration with the company. In the insured's action against the uninsured motorist, by necessity the issues of whether the insured is legally entitled to recover from the uninsured motorist, and the amount of such recovery will be resolved.
A parallel possibility exists regarding the amount of damages, so that, even if the insured successfully secures a judgment against the uninsured motorist, this may still prove a disadvantage to him. For example, if that judgment is in an amount which is substantially less than the insured claims, the insurance company may choose to argue that that judgment is a binding determination of the full measure of the insured's rights, thereby foreclosing the insured's right to arbitrate his claim under the uninsured motorist coverage. In other words, if the insured initially institutes an action against the uninsured motorist, the company may elect not to intervene, to simply let the action proceed, and then to adapt its own subsequent stance to the outcome of this action. If the results are ad verse to the claimant, the company may successfully invoke them as a bar to a subsequent claim by the insured or as a basis upon which to preclude an arbitration/trial of the claim. On the other hand, if the insured secures an extremely favorable result, the insurance company may argue that under the terms of the endorsement such a judgment is not conclusive as between the insurer and the company. (Emphasis supplied). (§ 7.13 at 265-266).
Although there are no New Jersey cases on point, there are cases with somewhat similar factual patterns which are helpful in the determination of this matter.
In New Jersey Manufacturers Ins. Co., v. Haran, 128 N.J. Super. 265, 319 A.2d 768 (App.Div. 1974), an insurer brought an action seeking a stay of arbitration pending the completion of the insured's action for personal injuries against the insured and uninsured motorists. The court refused to stay the arbitration proceeding. It stated:
"The arbitration provisions of the insurance contract would be frustrated if arbitration under the UM endorsement were enjoined every time a law suit arising out of the same occurrence was pending.
Conflicting results are a potential every time multiple claims arise out of the same transaction . .. Instances of conflicting results are well within the experience of courts and trial attorneys." (at 269, 319 A.2d 768).
In Riccio v. Prudential Property and Casualty Insurance Co., 108 N.J. 493, 531 A.2d 717 (1987), the court addressed the question of how settlement monies received in a judicial action were to be credited against a subsequent arbitration award. *695 The court discussed, at length, the goals and purposes of the uninsured motorist law and the joint tortfeasors contribution and comparative negligence laws. The court found that the purposes of each differed, and therefore, the amount of damages an injured could collect under each also differed. The court concluded that an application of contract principles, rather than tort law, to an uninsured motorist damage claim, assured a recovery that best complied with purposes of uninsured motorist legislation. (at 503-504, 531 A.2d 717). The Supreme Court said:
If there appears to be an anomaly in that the pursuit of a tort claim, either to verdict or to settlement, against named defendants in a law court may produce quite different results from those obtained through the processing of a UM claim in arbitration, so be it. We do not seek perfect symmetry so much as faithful adherence to basic principles of contract law and to the legislative intent in respect to statutorily mandated uninsured motorist coverage. (at 505, 531 A.2d 717).
At first blush, these cases appear to stand for the proposition that a claimant would be entitled to arbitration even where he has already obtained a judgment at trial, and thus support the plaintiff's position in this case.
However, in the case of Parks v. Colonial Penn Insurance Co., 98 N.J. 42, 484 A.2d 4 (1984), the Supreme Court gave a strong hint that the doctrine of issue preclusion should be applied to bar arbitration where there has been prior litigation of the issues intended to be encompassed by arbitration. In that case, the plaintiff, a passenger, injured in a one car accident, brought suit against the owner and the operator of the vehicle. The owner was insured by INA. The operator had no insurance. The passenger had his own automobile policy with Colonial Penn. At trial, the court dismissed against the owner on the grounds of no agency and directed a verdict against the operator. The trial judge then submitted to the jury the question of whether the operator was driving the automobile with the permission of the owner. The jury found that there was no permission.
*696 Plaintiff then demanded an arbitration proceeding pursuant to his automobile policy with Colonial Penn, alleging that the operator was uninsured at the time of the accident. Colonial Penn refused to arbitrate and plaintiff brought suit against Colonial Penn to compel arbitration. The court, on the basis of res judicata, entered judgment in favor of the plaintiff against Colonial Penn.
The Supreme Court held that the trial court erred in submitting the question of permissive use to the jury because it was irrelevant to the liability issue presented in the case. The court concluded that Colonial Penn therefore had a right to relitigate that issue in an arbitration proceeding. The Supreme Court said:
To the extent that the parties sought, with the trial court's permission and assistance, to litigate the permissive-use issue despite its lack of relevancy, they converted a straightforward negligence case into an insurance-coverage case  and this without the participation of a party who, as to the issue of coverage, was indispensable if it was to be bound by the determination, namely, Colonial Penn... A fair application of the doctrines of issue preclusion would not foreclose Colonial Penn's right to litigate the question of coverage under these circumstances. (at 47, 484 A.2d 4).
But the court went on to note:
Having said that, we nevertheless recognize that there are strong arguments for policies of issue preclusion that will avoid multiplicity of litigation over the same issue. Yet it remains essential that the party to be bound by the former adjudication have fair notice and be fairly represented in the prior proceeding. As we have indicated, we are not at all satisfied from this record that the interests of the claimant, Parks, were sufficiently co-extensive with those of the UM carrier, Colonial Penn, to justify issue preclusion under principles of collateral estoppel.
We do not discount the possibility that upon a fuller record issue preclusion might appropriately be invoked to prevent the subsequent litigation of the issue of permissive use. (at 47-48, 484 A.2d 4). (citations omitted).
The concept of waiver, rather than issue preclusion, was applied in the case of Poray v. Royal Globe Insurance Co., 90 N.J. Super. 454, 217 A.2d 916 (Law Div. 1966). The plaintiff was the driver of a vehicle, owned by one Vicki Zarilli, which was involved in a collision with an uninsured vehicle. The Zarilli vehicle was insured by defendant, Royal Globe. Uninsured motorist coverage was extended to the plaintiff under an omnibus *697 clause in the policy. Plaintiff instituted an action against the uninsured driver. At trial, the jury returned a verdict for the plaintiff in the amount of $4,000. Royal Globe thereafter refused to pay that amount to the plaintiff contending that she failed to comply with certain conditions of the policy. Specifically, Royal Globe contended that plaintiff failed to arbitrate the claim as required by the policy, and that she failed to obtain Royal Globe's consent before she instituted an action against the uninsured motorist. The court applied New York law to the insurance policy because the insured, Zarilli, was a New York resident and because the policy had been issued in New York. The court noted, however, "as will appear hereafter it makes no difference whether it (the insurance policy) is viewed by the law of New York or New Jersey." (at 459, 217 A.2d 916). The court went on to discuss the application of the doctrine of waiver to a right to arbitrate stating:
Arbitration statutes were enacted to expedite and facilitate the settlement of disputes and overcome the delay caused by litigation, but were not intended to be used as a means of furthering and extending the delay. The New York statute specifically authorizes the courts to grant a stay where actions are instituted in violation of the arbitration agreement, but this was not intended to help a party who had intentionally waived or abandoned the arbitration agreement and had chosen another remedy provided by law. There is nothing under the New York or New Jersey law which prevents abandonment or waiver by agreement or action of parties, and this may be accomplished by the parties expressly or by implication. (at 460, 217 A.2d 916).
The court concluded that Royal Globe had notice of plaintiff's initiation of a lawsuit against the uninsured, and by failing to demand arbitration of her uninsured motorist claim before a judgment was obtained, Royal Globe waived its right to demand arbitration under the provisions of the policy. (at 461, 217 A.2d 916).
A similar holding based on waiver was reached in the case of Farese v. McGarry, 237 N.J. Super. 385, 568 A.2d 89 (App.Div. 1989). In that case the plaintiff-landlord sued defendant-tenant for rent and damages to property. Defendant-tenant counterclaimed, alleging that the plaintiff had been unjustly enriched by the value of the improvements made by the tenant to the *698 property. The landlord sought to bar tenant's counter-claim by enforcing the arbitration clause in the lease which provided that disputes concerning repairs to the property were to be submitted to arbitration. The court held:
The landlord's right to rely on arbitration was waived by filing a complaint which alleged a claim for injury to property and by filing an answer to the counterclaim which did not allege arbitration as a defense until it was amended approximately nine months after the complaint was filed and two weeks before trial. (at 394, 568 A.2d 89).
A search in other jurisdictions has revealed several cases which are helpful.
In an Iowa case, Mizer v. State Automobile and Casualty Underwriters, 195 N.W.2d 367 (Iowa 1972) the court applied the doctrine of issue preclusion. In that case, an insured brought an action for personal injuries against an uninsured motorist. The matter went to trial and a jury returned a verdict in plaintiff's favor in the sum of $7,250. Plaintiff then instituted an action against her insurer again seeking compensation for her injuries and demanded the sum of $10,000, the amount provided for in the uninsured motorist provision of her policy. The court said:
"We hold plaintiff had her day in court with full opportunity [at trial] to effectively litigate the relevant issue of damages." (citation omitted) (at 370). There is no unfairness in holding plaintiff bound by the determination of her damages [at trial] reached after the matter had been fully litigated unless the insurance company is estopped by its contract from asserting such defense. (at 371).
The court then concluded that the plaintiff was not bound by the jury determination because the insurance company had specifically advised the plaintiff insured that it would not consent to a suit and would not be bound by any judgment.
In Universal Underwriters Insurance Co. v. Shuff, 67 Ohio St.2d 172, 423 N.E.2d 417 (1981), the court held that while res judicata does not directly prohibit an insured from compelling arbitration, it does require that the issues decided at trial should not be considered at arbitration. In that case, an insured brought an action to recover damages against an uninsured *699 motorist. A jury denied recovery and the insured then demanded that his insurer submit to arbitration under the terms of his policy. In response, the insurer brought an action in which it sought a declaration that the prior jury verdict was a binding determination of the insured's claim and thus barred the claim for arbitration. The court said:
"Although the doctrine of res judicata does not directly prohibit appellees from insisting on arbitration, the doctrine does dictate the necessary result." ([423 N.E.2d] at 418) .... even if appellees compelled appellant to arbitrate this matter and received a damage award, that result would clearly be erroneous and contrary to law under the doctrine of res judicata. Universal would then be entitled to undertake another proceeding to reinstate the jury verdict. After all this, the parties would be exactly where the jury left them. Arbitration, in this case, would be a "vain thing," and the well-settled policy of caution is expressed by the maxim, "equity will not decree a vain thing." (citation omitted). Therefore, under the terms of this insurance policy, Universal may refuse to arbitrate. (at 418).
The court reasoned:
The purpose of uninsured motorist coverage is to increase the likelihood that people who are injured in motor vehicle collisions will be compensated for their damage. "Arbitration is favored because its purpose is to `avoid needless and expensive litigation.'" (citation omitted).
Requiring arbitration in this case would, nevertheless, decrease the likelihood of recovery by other insureds and increase the likelihood of further litigation, i.e., if insureds may refer an uninsured motorist case to arbitration after a full trial on the merits, then insurance companies may certainly do the same. The mere threat of another proceeding would put a powerful tool in the hands of a party whose bargaining power is typically greater. Insureds would have to weigh the strategic advantage of judicial proceeding against a possible war of attrition waged by their own insurance companies. In the latter case, insureds may receive a diminished net recovery either due to the expense of a second proceeding or as a settlement to stave off this threat. (At 418-419).
New York courts have decided the issue on concepts of waiver rather than on that of issue preclusion. In an article entitled Arbitration from the Viewpoint of the Practicing Attorney: An Analysis of Arbitration cases decided by the New York State Court of Appeals from January 1973, to September 1985, H.R. Jones, 14 Fordham Urb.L.J. 523 (1986), the author writes:
The applicable principle is that an otherwise enforceable right to arbitration may be lost on the basis of waiver in consequence of participation in judicial *700 proceedings for determination of the same issue. The critical factor is the extent of the participation in the judicial proceedings." (At 544-45).
In Yonkers v. Cassidy, 406 N.Y.S.2d 32, 44 N.Y.2d 784, 377 N.E.2d 475 (Ct. of App. 1978), the City of Yonkers sought to permanently stay arbitration of a union's dispute with the city on the basis that the union had already litigated the matter in the courts. The New York Court of Appeals held that the union waived its right to arbitration by having proceeded with the judicial action. The court said:
Appellants chose to litigate this dispute in a declaratory judgment action. Having taken that course, they waived the right to submit the question to arbitration. (citations omitted). (406 N.Y.S.2d at 32, 377 N.E.2d at 476).
In Sherrill v. Grayco Builders, Inc., 486 N.Y.S.2d 159, 64 N.Y.2d 261, 475 N.E.2d 772 (Ct. of App. 1985), the issue presented to the court was whether a dispute between partners should be resolved by arbitration or by litigation. The defendants sought arbitration and argued that the plaintiff was bound by a written agreement to arbitrate. Plaintiff responded that any right defendant may have had to arbitrate the dispute was lost by its participation in litigation.
The court initially noted that, "[l]ike contract rights generally, a right to arbitration may be modified, waived or abandoned." (486 N.Y.S.2d at 162, 475 N.E.2d at 775). It went on to discuss situations when a party may or may not waive a right to arbitration, stating:
Not every foray into the courthouse effects a waiver of the right to arbitrate. Where claims are entirely separate, though arising from a common agreement, no waiver of arbitration may be implied from the fact that resort has been made to the court on other claims. Moreover, where urgent need to preserve the status quo requires some immediate action which cannot await the appointment of arbitrators, waiver will not occur where plaintiff "moves in court for protective relief in order to preserve the status quo while at the same time exercising its right under the contract to demand arbitration." (486 N.Y.S.2d at 163, 475 N.E.2d at 776). (citations omitted)
Parties electing the benefits of arbitration, including freedom from disclosure in accordance with the CPLR, from strict application of substantive principles of law and evidentiary rules, and from judicial review for errors of law and fact (citations omitted) cannot also draw on the judicial process for a particular advantage, such as pretrial disclosure not generally available in arbitration. "The courtroom may not be used as a convenient vestibule to the arbitration *701 hall so as to allow a party to create his own unique structure combining litigation and arbitration." (486 N.Y.S.2d at 164, 475 N.E.2d at 777). (citations omitted).
The court concluded that the defendant had
... by his litigation activity manifested a preference "clearly inconsistent with [his] later claim that the parties were obligated to settle their differences by arbitration." (at 163). (citation omitted).
In Scheck v. Motor Vehicle Accident Indemnification Corp., 243 N.Y.S.2d 288, 40 Misc.2d 575 (N.Y. Sup. Ct. 1963), the insurer sought to stay arbitration, requested by the insured, contending that the insured had waived his right to arbitration by instituting a judicial action. The court said:
[T]he claimant's procedure toward arbitration must be halted because they have waived their right to arbitrate by commencing a plenary action after having knowledge of their right to arbitration. (243 N.Y.S.2d at 291).
In Zurich Insurance Co. v. Evans, 392 N.Y.S.2d 564, 89 Misc.2d 717 (N.Y. Civ. Ct. 1977), the insurer sought to stay arbitration of unpaid no-fault insurance benefits claiming that the insured waived her right to arbitration when she instituted an action against the insurer. The court noted:
A party who commences an action is "generally ... assumed to have waived any right it may have had to submit the issued to arbitration." It is said that "generally" one waives any right to arbitration by commencing an action since in a very limited set of circumstances it has been found that there was no waiver, despite the commencement of an action. Thus, no waiver has been found when it was not clear that there was a dispute, where a party sought to preserve the status quo while arbitration was pending or where one was entrapped into taking action which could be called a waiver. (392 N.Y.S.2d at 566). (citations omitted).
The court went on to find that even though the insured discontinued the action against her insurer, she had "irrevocable lost" her right to arbitrate the dispute. (392 N.Y.S.2d at 567).
It is clear from this analysis that the plaintiff is barred from arbitrating her claim.
She is barred by the doctrine of issue preclusion because she had the opportunity to effectively litigate the issues of liability and damages. She therefore had her day in court.
*702 And she is barred under the doctrine of waiver because she proceeded to litigate her claim, knowing that she had a right to demand arbitration under the terms of the policy. The plaintiff chose her forum and must now live with it.
Defendant Prudential's motion for summary judgment is granted.