276 N.J. Super. 72 (1994)
647 A.2d 192
WILLIAM DICKENSON, PLAINTIFF,
v.
INDEMNITY INSURANCE CO. OF NORTH AMERICA, A SERVICING AGENT FOR THE N.J. AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOC., DEFENDANT, THIRD-PARTY PLAINTIFF,
v.
LICENSE BEVERAGE INSURANCE EXCHANGE, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Camden County.
Decided May 27, 1994.
*73 Sandford Schmidt for plaintiff (Gerstein, Cohen & Grayson, attorneys).
Laurie Harrold Rizzo for defendant, third party plaintiff (Slimm & Goldberg, attorneys).
ORLANDO, J.S.C.
This written decision supplements and amplifies the oral opinion which I have recently rendered. The resolution of this case requires the court to determine whether an injured motorist is barred from seeking underinsured motorist (UIM) benefits when a tortfeasor has liability limits greater than the claimant's UIM limits but the tortfeasor's carrier disclaims coverage asserting the failure of the tortfeasor to cooperate. If such a claimant is not barred from pursuing UIM benefits the court must then determine whether he must first secure a judicial determination as to the validity of the disclaimer by the tortfeasor's carrier before pursuing his UIM claim.
The underlying facts are not in dispute. On June 29, 1988, the plaintiff William Dickenson, sustained personal injuries when an intoxicated driver, Donna Wagner (Wagner) drove her vehicle into the plaintiff's residence. Prior to the collision, Wagner had become *74 intoxicated at Paul's Tavern (Paul's), owned by the defendant Wahway, Inc. (Wahway). Wagner had automobile insurance through the Hanover Insurance Company.
In February 1989, the plaintiff accepted Hanover's tender of its policy limits of $15,000.00. Prior to his acceptance of Hanover's policy limits, the plaintiff had notified his own automobile insurance carrier, Indemnity Insurance Company of North America, as servicing agent for the New Jersey Automobile Full Insurance Underwriting Association (INA), of Hanover's offer and his intention to pursue UIM benefits. The plaintiff has UIM limits of $100,000.00. INA interposed no objection to the plaintiff's accepting Hanover's policy limits.
In October 1989, the plaintiff filed a complaint for personal injuries naming as defendants Thomas Wakley, Wahway, Inc. and Paul's Tavern. At the time of the collision Thomas Wakley (Wakley), Wahway and Paul's were covered by a policy of liability insurance issued by License Beverage Insurance Exchange (Beverage) in the amount of $300,000.00. Default was entered against Wakley, Wahway, and Paul's on August 16, 1990. After a proof hearing held on September 18, 1990 judgment was entered against the defendants Wakley, Wahway, and Paul's in the amount of $185,000.00 for the plaintiff's personal injuries.
Thereafter Wakley, Wahway and Paul's were provided counsel by Beverage. Counsel moved to vacate the default judgment entered against the defendants. That application was unsuccessful. Thereafter, Beverage denied coverage to Wakley, Wahway and Paul's on the ground that the tavern failed to advise the carrier of the summons and complaint filed by the plaintiff thereby allowing for the entry of default. The carrier did however pursue an appeal on behalf of Wakley, Wahway and Paul's to reverse the trial court's decision denying their motion to vacate the default judgment.
The Appellate Division, in May 1992, confirmed the trial court's denial of the motion to vacate the default entered against Wahway and Paul's, but reversed and remanded for a new proof hearing *75 allowing Wahway and Paul's limited participation. The Appellate Division also dismissed all claims against Wakley individually.
A second proof hearing was heard on March 23, 1993. As a result of that hearing, the court made the following determinations: Wahway and Paul's were jointly liable with Wagner for the plaintiff's injuries. It was determined that Wahway and Paul's were 50% at fault. The court found the plaintiff's medical expenses attributable for treatment of the injuries sustained in the accident were $40,000.00 and that his pain and suffering was $70,000.00. The court also determined that the plaintiff had property damage in the amount of $14,900.00. Beverage refused to pay any amount of the judgment assessed against Wahway or Paul's because of the alleged failure of Wahway and Paul's to notify the carrier promptly of the service of the summons and complaint.
After the second proof hearing, the plaintiff demanded arbitration pursuant to the UIM endorsement with INA. INA resisted arbitration. It stated that it would not entertain plaintiff's request for arbitration until the issue of whether Beverage's declination of coverage for Wahway and Paul's was proper had been determined. INA suggested that the plaintiff obtain an assignment from the defendants and pursue a declaratory judgment action against Beverage.
While the plaintiff offered to cooperate in any action that INA might institute against Beverage, he insisted that he was entitled to UIM benefits under his policy of insurance. When INA continued to decline to participate in arbitration he instituted this action. INA has filed a third party complaint against Beverage. The plaintiff now moves for Summary Judgment.

I
The defendant contends that the plaintiff cannot recover UIM benefits if the limits of liability under the policies insuring the tortfeasors exceed the limits of liability under UIM endorsements. In this case, INA asserts that the liability limits of *76 Hanover ($15,000.00) and Beverage ($300,000.00) exceed the UIM benefits available under its policy with Dickenson, i.e. $100,000.00. The defendant asserts that N.J.S.A. 17:28-1.1e mandates that the comparison of all bodily injury liability insurance policies with the available UIM benefit be made at the time of the collision and not sometime thereafter. Therefore, because at the time of the collision $315,000.00 in liability benefits were potentially available to the plaintiff and that sum exceeds his UIM limits of $100,000.00, he is barred from making a claim under his UIM endorsement. Alternatively, the defendant INA argues that even if the plaintiff is entitled to UIM benefits, he is not entitled to them until he has pursued a declaratory judgment action to have a judicial determination of whether or not Beverage's declination of coverage was legally permissible.
The plaintiff, on the other hand, asserts that the use of the term "available" in N.J.S.A. 17:28-1.1e refers to amounts that will be available to the plaintiff for collection. He argues that the purpose of UIM would be defeated if a plaintiff were not to have available to him UIM coverage when liability coverage is denied due to the actions of a tortfeasor over which he had no control. Secondly, he argues that, once a carrier has declined coverage, he should be permitted to pursue his UIM coverage. He acknowledges that, while he might be obligated to cooperate in an action his UIM carrier may choose to pursue against Beverage, he should not be required to pursue such an action. He contends that proceeding in this way favors the goal of having injured parties promptly compensated for their losses.
The circumstances under which an insured is entitled to UIM benefits is set forth in N.J.S.A. 17:28-1.1e(1), which states in part:
For the purpose of this section, (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily *77 or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds....
In Bauter v. Hanover Ins., 247 N.J. Super. 94, 588 A.2d 870 (App.Div.) certif. denied, 126 N.J. 335, 598 A.2d 893 (1991), the Appellate Division considered the claim of the plaintiff who sought to recover under a UIM provision of his insurance policy after making recoveries against an intoxicated driver and also against the liquor establishment who had served the intoxicated driver. Plaintiff's wife was killed in a motor vehicle collision while a passenger in an automobile operated by the plaintiff. Plaintiff instituted a personal injury and wrongful death action against the intoxicated driver of the other car and also a dram shop action against the liquor establishment that served the intoxicated driver. He settled the claim against the intoxicated driver for $25,000.00, the policy limits of the driver's auto liability policy, and he settled the claim against the tavern for $500,000.00 which was the proceeds of the liability policy insuring the establishment. He thereafter sought UIM benefits from Hanover, his own carrier. His policy of insurance with Hanover provided for UIM coverage in the amount of $300,000.00. He made a claim against Hanover for $275,000.00. Hanover denied coverage, contending that because the dram shop action settled for an amount greater than the $300,000 UIM coverage, there was no obligation to pay the plaintiff under his UIM endorsement. The court determined that because the plaintiff had recovered more than his UIM limits he was barred from pursuing a claim under his UIM endorsement. Critical to the court's decision was the language of N.J.S.A. 17:28-1.1e, which provides in pertinent part as follows:
The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily liability insurance or bonds. (Emphasis added.)
*78 Because the plaintiff in Bauter had recovered $25,000 from the one tortfeasor's auto liability policy and $500,000 from the bar's liability policy, those amounts exceed his UIM limits of $300,000, and he was therefore barred from recovery.
In Gold v. Aetna Life and Casualty Ins. Co., 233 N.J. Super. 271, 558 A.2d 854 (App.Div. 1989), the court considered the application of N.J.S.A. 17:28-1.1e to a case in which the only alleged tortfeasor with liability limits greater than the insured's UIM limits had paid less that his liability limits and, consequently, the total settlement was less than the insured's UIM limits. In Gold, the plaintiff was injured in a motor vehicle accident involving three other vehicles. Two vehicles had $25,000 coverage each. The remaining driver had $300,000 policy limits. The plaintiff negotiated a settlement with the three drivers for the total sum of $112,500. The driver with the $300,000 policy settled for $70,000.00 and the other two drivers settled for $20,000 and $22,500. respectively. The insured had UIM limits of $250,000 and sought UIM coverage after settlement of his third party claims, contending that his damages exceeded $112,500. The carrier denied the claim, contending that the total liability limits of the persons against whom claims were made exceeded the plaintiff's UIM coverage. The court concluded that the availability of UIM coverage depended on the policy limits of actual tortfeasors. The court ruled that the settlement of a claim against a driver does not bar the insured from a UIM arbitration on whether or not the settling motorist was an actual tortfeasor. Critical to the court's decision was its analysis of the term "available" as used in N.J.S.A. 17:28-1.1e. The court stated:
Thus, we hold that when the statute, N.J.S.A. 17:28-1.1(e), speaks of "available" insurance coverage, it plainly refers to that of persons who are actual responsible tortfeasors and not that of those who may have been "involved" in the accident without being liable under the law. To rule otherwise would lead to the result that underinsured coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.
[Gold, supra, 233 N.J. Super. at 276, 558 A.2d 854.]
The court ruled that plaintiff would be entitled to UIM benefits if an arbitrator concluded that the settling defendant was not an *79 actual tortfeasor. See also Prudential Property & Casualty Ins. Co. v. Kress, 241 N.J. Super. 81, 574 A.2d 482 (App.Div. 1990).
In the present case there is a critical distinction between this plaintiff and the plaintiff in Bauter, supra. The plaintiff in Bauter had recovered $500,000.00 from the liquor establishment's liability carrier whereas the instant plaintiff has not been able to make any recovery from the tavern's liability carrier because the carrier has denied coverage. In Bauter, the Appellate Division focused on that portion of N.J.S.A. 17:28-1.1e which provides that the limits of UIM coverage available to a plaintiff shall be reduced by the amount he has recovered under all the bodily injury liability policies. Dickenson has only recovered $15,000.00 from the motorist's carrier. When this $15,000.00 is compared to his UIM limits of $100,000.00, it is clear that his UIM limits exceed the amount which he has recovered and he, therefore, should be entitled to pursue his UIM claim.
This reasoning is also consistent with the result reached by the court in Gold, supra. The court in Gold mandated that a practical common-sense understanding of the term "available" as used in N.J.S.A. 17:28-1.1e be made. Therefore, the court, in the context of that case, held that when the statute speaks of "available insurance coverage", it plainly refers only to that of persons who are actual responsible tortfeasors. The court noted that to rule otherwise would eliminate UIM coverage whenever entirely blameless persons were involved in an accident and happen to be heavily insured.
In the present case, although there was a $300,000.00 liability policy in existence at the time of the collision, it is not available to the plaintiff because of the alleged failure of the bar or tavern to follow the policy's requirements concerning notification after it had received the summons and complaint. Indeed, these monies are never available to the plaintiff and they are not available to the plaintiff by reason of any fault of his. The plaintiff has diligently pursued his claim against Paul's, having filed a complaint and gone to a proof hearing, taken an appeal to the Appellate Division, and *80 participated in a subsequent proof hearing. To rule that the plaintiff is barred from the UIM benefits because the tavern at the time of the collision had $300,000 of coverage, even though the carrier is declining to pay any amount, would give a tortured meaning to the term "available" as used in the statute. Moreover, it would not be consistent with the purpose of UIM coverage. Judge Pressler, in Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988), delineated the rationale for the UIM endorsement in motor vehicle policies when she stated:
The predicate of the 1983 amendments was the Legislature's evident perception that in terms of obtaining an adequate recovery from a negligent driver, the victim, especially one sustaining serious injuries, is placed at financial risk not only by uninsured drivers but also by underinsured drivers, typically drivers with minimum liability coverage of $15,000/30,000 permitted by the statute.
[Id. at 177, 538 A.2d 414.]
Obviously, if the goal of the UIM endorsement is to assist a seriously injured victim in obtaining an adequate recovery, that goal would be frustrated if a plaintiff were barred from pursuing UIM benefits where a carrier had declined coverage because of a tortfeasor's failure to comply with the policy's terms and conditions. Indeed, such a plaintiff would be a double loser. He loses his ability to collect under the tortfeasor's policy and he loses his ability to collect under his UIM endorsement. Accordingly, I determine that the plaintiff is not barred from pursuing a claim for UIM benefits when a tortfeasor's carrier has declined coverage due to the tortfeasor's failure to timely report service of the summons and complaint.

II
The next question is: when may the plaintiff pursue his claim under the UIM endorsement? Must the plaintiff secure a judicial determination that Beverage's disclaimer of coverage was valid before being entitled to pursue a claim for UIM benefits?
The UIM endorsement in the policy issued by INA to the plaintiff provides in pertinent part as follows:

*81 We will pay damages under this coverage caused by an accident with an underinsured motor vehicle only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.
Although there has been a judgment against Beverage's insured, there has been no payment by Beverage by reason of its disclaimer. Therefore, at the present time, the policy issued by Beverage cannot be said to be "applicable." Moreover, there is nothing in the policy which requires an insured to pursue a declaratory judgment action against a carrier who disclaims coverage. In this regard, the uninsured motorist (UM) endorsement in the policy is instructive. An uninsured motor vehicle is defined in the relevant section as follows:
A land motor vehicle or trailer of any type ... (4) to which a bodily liability bond or policy applies at the time of the accident but the bonding or insuring company a) denies coverage.
While in the present case we are dealing with a tavern and not a motor vehicle, the language in the UM endorsement evidences the defendant's intent to regard a carrier's denial of coverage as rendering a tortfeasor uninsured.
In Parks v. Colonial Penn Ins. Co., 98 N.J. 42, 484 A.2d 4 (1984), the Supreme Court reversed a lower court ruling permitting the plaintiff to proceed to arbitration pursuant to his UM claim. The court determined that the UM carrier could not be bound by a jury determination in an underlying negligence action that the negligent driver was not a permissive driver when the carrier was not a party to the litigation and permissive use of the vehicle was an entirely extraneous issue in the auto negligence case. In its ruling the court noted it had been requested as part of its decision to overrule Travelers Indem. Co. v. Mongiovi, 135 N.J. Super. 452, 343 A.2d 750 (App.Div. 1975). The Mongiovi case holds that a UM endorsement, defining an uninsured motor vehicle as one as to which an insurer has disclaimed coverage, entitles an insured to proceed to arbitration on his UM claim without there first being a judicial determination as to the validity of the carrier's disclaimer. The Court declined to overrule Mongiovi. In so doing the Court stated:

*82 For the moment we go no further than to recognize that the Mongiovi holding represents one efficient way of getting compensation into the hands of an injured insured quickly, leaving it to the disputing carriers later to litigate the issue as to which of them must ultimately pay.
[Id., 98 N.J. at 50, 484 A.2d 4.]
The Court went on to conclude that if the UM endorsement in the Colonial Penn policy was similar to the UM provision in Mongiovi, the case should proceed to arbitration.
In Longworth, supra, the Appellate Division noted that the legislative scheme with respect to UM and UIM coverage was intended to be congruent. Judge Pressler, writing for the court, stated:
We are of the view that the legislative scheme in respect of UM and UIM coverage was intended to be basically congruent in affording the insured a contractual right against his own insurer to compensate at least in part for the tortfeasor's insurance inadequacy. Whether that inadequacy is no insurance at all or underinsurance has no conceptual consequence since, under the legislative scheme, the insured victim's contractual recovery is in both cases limited to the amount of the coverage purchased from his own carrier. The only difference is that in the case of no insurance, the carrier is obligated to pay its own insured up to the coverage limit. In the case of underinsurance, the carrier is obligated to pay its insured up to the coverage limit less the tortfeasor's coverage limit. Everything else is the same.
[Longworth, 223 N.J. Super. at 193, 538 A.2d 414.]
Thus, in the absence of anything in the UIM endorsement requiring an insured to have a judicial determination of the validity of a third party's disclaimer of coverage, a carrier's denial should, under the policy, be considered unavailable to the insured so as to allow him to pursue UIM benefits.
The UIM endorsement in the INA policy is similar to the UM provision considered by the Court in Mongiovi, supra. Moreover, the recognition by the Supreme Court in Parks, supra, that allowing arbitration to proceed so as to get compensation to an injured party while the carriers litigate as to which must ultimately pay is an appropriate goal and methodology. Indeed, this procedure is consistent with the policy and methodology underlying UIM coverage. In Longworth, supra, the court determined that an insured receiving an acceptable settlement offer from the tortfeasor should notify the UIM carrier. The carrier then may *83 offer its insured that sum for an assignment of the claim. If an insured does not receive a prompt response from the carrier, it may settle the claim against the tortfeasor, giving a general release, and thereafter pursue a UIM claim. This methodology provides a means by which an injured party may promptly receive compensation without being required to litigate a case against a tortfeasor who is willing to settle and at the same time the UIM carrier is able to protect its subrogation interests. Those goals are served in this case by allowing the plaintiff to pursue UIM benefits at this time in light of Beverage's denial of coverage. Dickenson will be required to assign any rights which he may have to INA with respect to any claim he has against Beverage and to cooperate with INA in any litigation it pursues against Beverage.
To rule otherwise would frustrate the purpose of prompt payment to injured parties. Dickenson has already been through two proof hearings and an appeal to the Appellate Division. Now, the carrier demands he pursue a declaratory judgment action against a disclaiming carrier before seeking UIM benefits. This will delay receipt of any additional compensation for a considerable period of time. Such a result does not further the goals and purposes of the UIM statute as articulated by Judge Pressler.
Accordingly, the plaintiff may immediately pursue his claim for UIM benefits.