670 A.2d 123

DENISE A. HESSER, PLAINTIFF–RESPONDENT, v.
HARLEYSVILLE–GARDEN STATE INSURANCE
CO., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 27, 1995—Decided January 31, 1996.

48

Before Judges SKILLMAN, LEVY and EICHEN.

*J. Robert McGroarty* argued the cause for appellant (*Mr. McGroarty,* on the brief).

*Warren W. Faulk* argued the cause for respondent; (*Brown & Connery,* attorneys; *Mr. Faulk,* on the brief).

The opinion of the court was delivered by

Paul G. LEVY, J.A.D.

In this matter we consider whether plaintiff's automobile insurance policy or *N.J.S.A.* 17:28–1.1, or both, provided $75,000 uninsured motorist coverage plus $75,000 underinsured motorist coverage for her injuries from an accident involving both uninsured and underinsured vehicles, under a liability policy declaring $75,000 to be its "maximum limit of liability for all damages resulting from any one accident." Plaintiff was granted a declaratory judgment, providing the total of both coverages available regardless of the limit. We disagree and therefore reverse.

Plaintiff was a passenger in a car owned and operated by Linda Freund which collided with an automobile owned and driven by Carmen Sylvester. Freund was insured by Keystone Insurance Companies with liability coverage limits of $15,000 per person and $30,000 per accident, while Sylvester was uninsured. Each passenger (three in the Freund vehicle and one in Sylvester's) was seriously injured, and Keystone agreed to tender its $30,000 policy limit, subject to the passengers' agreement to equitably distribute those proceeds.

Defendant Harleysville Garden State Insurance Co. (Harleysville) issued a personal auto policy to plaintiff. She was seriously

hurt, with injuries to her brain, skull and face. Plaintiff notified defendant that she sought $75,000 for her claim against Sylvester under the policy's uninsured motorist (UM) coverage as well as $75,000 for her claim against Freund under the underinsured motorist (UIM) coverage. Harleysville agreed to pay $75,000 to settle plaintiff's UM claim but denied any availability of UIM coverage because its total liability under the policy was limited to $75,000 for any one accident.

The various coverages selected when the Harleysville policy was purchased are summarily stated on the declarations page simply as:

| Coverages | Limits of Liability |
|---|---|
| LIABILITY | $75,000 EA ACCDNT |
| UNINSURED MOTORIST | $75,000 EA ACCDNT |

Part C of the policy is the endorsement for "Uninsured Motorists Coverage—New Jersey." While both the declaration of coverage and the endorsement use only the term "uninsured motorist," the policy also includes coverage for underinsured motorists in this endorsement. The "schedule" listing the vehicles to be insured with their attendant limits of liability and premiums is headed (in bold type) by the words: **"UNINSURED MOTORISTS COVER-AGE (Includes Underinsured Motorists Coverage).** The "insuring agreement" begins by stating:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle". . . .

Part C also contains the limits of the insurer's liability.

> *The limit of liability shown in the Schedule or in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay* regardless of the number of:
>
> . . . .
>
> 4. Vehicles involved in the accident.
>
> . . . .
>
> (emphasis added)

Along with the policy, Harleysville supplied the mandated Buyer's *Guide* in compliance with *N.J.A.C.* 11:3–15.6, presumably read

by plaintiff. The Buyer's Guide explains the difference between UM and UIM coverage and that benefits are paid up to the coverage limit selected by the policyholder, explicitly stating the statutory minimum and maximum limits. In pertinent part it states:

> Despite New Jersey law, which requires auto insurance, many cars are not covered by insurance. Some motorists break the law. Many other motorists are residents of other states which do not require auto insurance by law.
>
> Because these motorists can cause accidents, you are required to buy uninsured motorist coverage.
>
> . . . .
>
> There are other motorists who have auto insurance coverage but with very low limits. When you buy uninsured motorist coverage, you are also provided coverage to protect you from those motorists who are **underinsured.** If you are in an accident caused by such a motorist, underinsured motorist coverage will pay damages up to the difference between your underinsured motorist coverage limit and the other driver's liability coverage limit.
>
> You must by law purchase uninsured motorist coverage which will pay, for each accident, at least the following amounts:
>
> > $15,000 for any one person's injuries;
> >
> > $30,000 when more than one person is injured;
> >
> > $5,000 for property damage.
>
> . . . .
>
> You can buy higher uninsured/underinsured motorist coverage limits, but only as high as the liability coverages you have purchased. Most companies sell up to $250,000/$500,000/$100,000 coverage or a combined single limit of $500,000.

*N.J.S.A.* 17:28–1.1(a) requires each auto liability policy to insure against uninsured motorists (or hit and run drivers) to at least the extent of $15,000/$30,000/$5,000. Underinsured coverage is not mandated, but *N.J.S.A.* 17:28–1.1(b) requires all auto insurers to provide UM and UIM coverage, "as an option," up to at least $250,000/$500,000/$100,000, "except that the limits for uninsured and underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively." Rates for UM and UIM coverage for the same limits are to be uniform statewide. *N.J.S.A.* 17:28–1.1(d) provides that UM is subject to the policy terms including "nonduplication of coverage." *N.J.S.A.* 17:28–1.1(e) includes in the definition of UIM that UIM shall not apply to an uninsured motor

vehicle, and in the definition of UM that UM shall not apply to an underinsured motor vehicle.

The coverage descriptions in *N.J.S.A.* 17:28–1.1, in the Buyer's Guide and in the Harleysville policy each deal with the total indemnification to be expected if the insured is harmed in an accident with other drivers having less coverage than the insured. UM is the worst case scenario—it involves a tortfeasor whose coverage is 100% less than the insured's policy limit. The UM/UIM policy limits are calculated from the personal injury and property damage coverage selected by the insured. The risk, for which the premium is assessed, is that the insured will be damaged by a tortfeasor or tortfeasors with less coverage than the insured chose to protect his or her own liability.

We view this dispute as a pure question of contractual interpretation.

> Our function in construing these policies of insurance, as with any other contract, is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies.... In this pursuit, we cannot emphasize too strongly that when an insurance policy "is clear and unambiguous ... the court is bound to enforce the policy as it is written. It is not the function of the court to make a better contract for the parties than they themselves have seen fit to enter into or to alter it for the benefit of one party and to the detriment of the other."
>
> [*Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 *N.J.Super.* 409, 416, 638 *A.*2d 924 (App.Div.1994) (citations omitted).]

Therefore, consideration of the entire Harleysville insurance policy, as well as the Buyer's Guide and the statute, leads us to conclude the parties intended the insured electing UM/UIM coverage to be indemnified for all property damage and bodily injury up to $75,000 for any one accident. While the Harleysville policy protects against injury and damage caused by either an uninsured or underinsured driver, or both, the cumulative limit of that protection is $75,000.

In *Downey v. City of Elizabeth*, 273 *N.J.Super.* 335, 337, 641 *A.*2d 1109 (App.Div.1994), we noted that while an insured may obtain UM/UIM coverage up to $250,000/$500,000, it is "subject to the stipulation that the UM and UIM coverage opted for not

exceed the insured's liability limits." Holding that UIM coverage is not mandated for a municipal self-insurer, we "recognize[d] that UIM coverage is grounded in considerations of fundamental fairness" and "[t]here is surely an essential justice in affording motorists the opportunity to purchase for themselves the same amount of protection they purchase for others." But justice is not done by requiring an insurance company to provide double the amount the motorist purchased for herself.

 The trial judge based her decision on *Coniglario v. Hanover Ins. Co.*, 233 *N.J.Super.* 627, 559 *A.*2d 875 (Law Div.1989). Insofar as *Coniglario* determined that an insured was eligible to recover both UM and UIM claims when injured in an accident involving both an uninsured and an underinsured vehicle, we agree. However, to the extent that *Coniglario* implies that the total UM and UIM benefits can exceed the overall limitation of liability stated in the policy, we overrule that decision. Whenever there are two or more tortfeasors with a Harleysville type policy, it would be anomalous to allow a claimant to recover $150,000 from a combination of uninsured and underinsured tortfeasors while limiting recovery to $75,000 if all the tortfeasors happened to be uninsured or all were underinsured. Neither the contracting parties nor the Legislature could have intended such a result.

The clear intention of the Harleysville limits of liability is that no more than $75,000 will be paid for injuries inflicted by the insured to others, and no more than $75,000 will be paid to the insured as indemnification for damages caused by a tortfeasor arising out of any one accident. Therefore the declaratory judgment should have been entered limiting defendants' liability to no more than $75,000.

 The parties raise another point which the judge considered and decided but did not include in the order granting summary judgment. Defendant sought a setoff of all payments made for personal injury protection (PIP) coverage, and plaintiff countered that any setoff should be limited to UM and UIM claims for PIP elements, such as medical expenses, to simply prevent double

recovery. At the conclusion of the argument, the judge expressed an opinion that to a certain extent, a setoff would not be allowed. This determination is not part of the order appealed herein and therefore we will not consider it, because appeals are taken from judgments and not from opinions. *See Hughes v. Eisner*, 8 *N.J.* 228, 229, 84 *A.*2d 626 (1951).

Reversed.