676 A.2d 1074

ROBERT GREEN, PLAINTIFF–APPELLANT, v. SELECTIVE INSURANCE COMPANY OF AMERICA (SELECTED RISKS INSURANCE COMPANY), DEFENDANT–RESPONDENT.

Argued January 29, 1996—Decided June 12, 1996.

*Gary D. Wodlinger* argued the cause for appellant (*Lipman, Antonelli, Batt, Dunlap, Wodlinger and Gilson,* attorneys; *Donna M. Taylor,* on the brief).

*Edward J. Tucker* argued the cause for respondents (*Tucker, Latterman & Munyon,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This appeal presents two issues: (1) whether the statute of limitations on a claim for underinsured motorist (UIM) benefits begins to run on the date of an accident or on the breach of the insurance contract; and (2) whether this claimant has forfeited a right to collect underinsurance benefits by failing to give prompt notice to the insurance company or otherwise having prejudiced the insurance company's subrogation rights.

I

On October 17, 1985, plaintiff, Robert Green, was injured in a three-car automobile accident. One car, driven by Johnnie Tingle, collided with a car driven by Mary Galex. The two then collided with Green's car. The Tingle car had a $15,000 liability insurance policy, and the Galex car had a $250,000 policy. (These were the per person limits.) Green had $100,000 of UIM coverage with defendant Selective Risks Insurance Company (Selective). An oversimplified graphic of the accident scene lends insight into the statute of limitations issue.

Green reasonably believed that to recover for his serious personal injuries, he would have to make a claim under his UIM policy. Green valued his claim at over $82,000. Selective had early notice of the general extent of Green's injuries. It paid him personal injury (PIP) benefits under the policy. During the course of Green's treatment, Selective refused to continue to pay medical bills that were being incurred. Green had to sue Selective to provide the PIP benefits. That case was ultimately settled by the parties.

In June 1987, Green sued Galex and Tingle. In August 1988, Tingle's insurance carrier paid its $15,000 policy limits into court. Green refused to settle for that amount and wished to proceed with the litigation. Inadvertently, the file was closed without notice to the parties during the pendency of the lawsuit. On August 26, 1992, the court reopened the case, five years after the original complaint was filed. In the interim, Tingle had died.

The court held a settlement conference on February 1, 1993. Galex's insurance company denied that Galex was responsible for the accident, but offered $2,500 to settle any claims against her. Green believed that without Tingle's testimony, he would be unable to prove that Galex was liable for the accident. Therefore,

he contacted his own insurance company, Selective, by telephone and later in writing, to preserve his underinsurance rights under *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div.1988). We summarized the *Longworth* requirements as follows:

[W]hen an insured under an automobile insurance policy providing UIM benefits is involved in an accident and undertakes legal action against the tortfeasor, *the insured must notify the UIM insurer of that action.* If, during the pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages, then *the insured should again notify the UIM insurer* of that fact.

[*Rutgers Casualty Ins. Co. v. Vassas,* 139 *N.J.* 163, 174, 652 *A.*2d 162 (1995).]

Selective's representative told Green that it considered its file closed due to the passage of time, and that he should exercise his own judgment as to whether or not to accept the offer. Green decided to accept the settlement.

In February 1993, over seven years after the accident, Green sought arbitration of his claim against Selective for UIM benefits. Selective asserted that the statute of limitations barred Green's claim, and the company denied any duty to arbitrate. In March 1993, Green brought a declaratory judgment action to compel Selective to submit to arbitration. Selective moved for summary judgment on September 28, 1993. After oral argument, the trial court granted Selective's motion and dismissed Green's complaint, holding that the claim was barred by the statute of limitations. It ruled that *N.J.S.A.* 2A:14–1, the six-year statute of limitations applicable to contract claims, had begun to run on the date of the accident, and that time had therefore expired on the claim more than a year before Green brought suit against Selective.

On appeal, the Appellate Division affirmed the trial court's dismissal but not on the basis of the statute of limitations. Instead, it relied on our recent decision in *Rutgers Casualty.* Green petitioned for certification, asserting that he had complied with the *Vassas* guidelines for processing of UIM claims. We granted his petition. 142 *N.J.* 456, 663 *A.*2d 1363 (1995). We now reverse the judgment of the Appellate Division and reinstate Green's complaint against Selective.

## II

This is not the case in which to "plumb the intricacies" of the law of underinsured motorist coverage. *Riccio v. Prudential Property & Casualty Ins. Co.,* 108 *N.J.* 493, 498, 531 *A.*2d 717 (1987). In *Riccio,* the Court observed that this subject, characterized at oral argument in that case as "really quite simple," was anything but simple. *Ibid.* One thing that we are certain of, however, is the increasingly important role that UM and UIM coverages play in automobile claim reparations. *See generally* Gerald W. Scott, *Uninsured/Underinsured Motorist Insurance: A Sleeping Giant,* 63 *J. Kan. B. Ass'n* 28 (May 1994); Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law* (1996) [hereinafter Craig & Pomeroy]. A cursory review of recent rulings confirms the importance of such insurance. *Ainsworth v. State Farm Mut. Ins. Co.,* 284 *N.J.Super.* 117, 663 *A.*2d 1365 (App.Div.1995), *certif. denied,* 143 *N.J.* 328, 670 *A.*2d 1068 (1996); *Prudential Property & Casualty Co. v. Keystone Ins. Co.,* 286 *N.J.Super.* 73, 668 *A.*2d 92 (Law Div.1995); *Coniglario v. Hanover Ins. Co.,* 233 *N.J.Super.* 627, 559 *A.*2d 875 (Law Div.1989), *overruled by Hesser v. Harleysville–Garden State Ins. Co.,* 287 *N.J.Super.* 47, 670 *A.*2d 123 (App.Div.1996).

The standard automobile insurance policy does impose specific duties upon policyholders who purchase UIM coverage. These include the obligation to notify the insurance company of the accident, to cooperate with the investigation and defense of any claim, to forward copies of all legal papers if suit is brought, and to preserve the insurance carrier's subrogation rights against the tortfeasor. The standard automobile policy does not, however, set forth a period of limitations within which time a claim for UIM coverage must be brought. In contrast, PIP claims are governed by a special statute of limitations. *See Zupo v. CNA Ins. Co.,* 98 *N.J.* 30, 483 *A.*2d 811 (1984).

This is the first time that we have addressed the question of when the statute of limitations begins to run on a UIM claim. Plaintiff argues that the cause of action did not arise until the

underlying automobile case had been terminated and the insurance company denied coverage. A number of cases have so held. *See, e.g., Allstate Ins. Co. v. Altman*, 200 *N.J.Super.* 269, 275, 491 *A.2d* 59 (Ch.Div.1984) (explaining that the analogous cause of action under a UM policy does not accrue until breach). A majority of jurisdictions has held that the contractual relationship between the insured and the insurer underlies an action for UIM benefits, not the relationship to the tortfeasor. These courts have concluded that the limitations period for a UIM claim begins to run when the insurance company makes a breach of the policy, not when the accident occurs. *Blutreich v. Liberty Mut. Ins. Co.*, 170 *Ariz.* 541, 826 *P.2d* 1167, 1169 n. 2 (1991) (statute of limitations on insured's UIM claim begins to run when insurer breaches insurance contract); *Metropolitan Property & Liability Ins. Co. v. Walker*, 136 *N.H.* 594, 620 *A.2d* 1020, 1022 (1993) (same); *Uptegraft v. Home Ins. Co.*, 662 *P.2d* 681, 685 (Okla.1983) ("The recovery of the insured is based ultimately upon the policy without which no liability could be imposed upon the insurer for the tort of another."); *Safeco Ins. Co. v. Barcom*, 112 *Wash.*2d 575, 773 *P.2d* 56, 60 (1989) (statute of limitations begins to run against insured on date of breach of UIM contract by insurer).

Selective contends that the statute of limitations for UIM claims should begin to run on the date of the accident. The jurisdictions that favor this approach reason that the right of action against the UIM carrier stems from the plaintiff's right of action against the tortfeasor, and thus the limitations period begins at the same time for both the insurance and the tort actions. *State Farm Mut. Auto. Ins. Co. v. Kilbreath*, 419 *So.*2d 632, 633 (Fla.1982); *O'Neill v. Illinois Farmers Ins. Co.*, 381 *N.W.*2d 439, 441 (Minn.1986); *see also Fladd v. Fortune Ins. Co.*, 530 *So.*2d 388, 390–91 (Fla.Dist.Ct. App.1988) (applying same rationale to claim for PIP benefits and concluding that cause of action arises at time of accident).

We disagree with the reasoning of those cases (although we may not disagree with the result) because our cases have repeatedly emphasized that the nature of a UIM claim is conceptually differ-

ent from the recovery in tort. *Riccio, supra,* 108 *N.J.* at 499, 531 A.2d 717 (noting that although insured claimant is remitted to common-law tort principles to establish liability of uninsured and nature and extent of damages, the claimant's rights under UM endorsement are governed by contract with UM carrier).

Although we respect the reasoning of the cases that have held that the claim does not arise until there is a breach of the insurance contract, we believe that such a holding runs counter to the policies that have prompted the Legislature to require the inclusion of uninsured motorist coverage and the availability of underinsured motorist coverage in every automobile insurance policy. That legislative policy seeks to "provid[e] maximum and expeditious protection to the innocent victims of financially irre-sponsible motorists." *Longworth, supra,* 223 *N.J.Super.* at 184, 538 A.2d 414. Consistent with those goals, the *Longworth* court said:

> We are of the view that the legislative scheme in respect of UM and UIM coverage was intended to be basically congruent in affording the insured a contractual right against his own insurer to compensate at least in part for the tortfeasor's insurance inadequacy. Whether that inadequacy is no insurance at all or underinsurance has no conceptual consequence since, under the legislative scheme, the insured victim's contractual recovery is in both cases limited to the amount of the coverage purchased from his own carrier. The only difference is that in the case of no insurance, the carrier is obligated to pay its own insured up to the coverage limit. In the case of underinsurance, the carrier is obligated to pay its insured up to the coverage limit less the tortfeasor's coverage limit. Everything else is the same. That being so, it is clear to us that the most efficient procedure and the procedure most nearly comporting with the legislative intent would be to permit the insured victim, at his option, to pursue his remedy under the UIM coverage without first having to conclude his claim against the tortfeasor. If the consequent arbitration resulted in a finding of the tortfeasor's liability and an award of damages in excess of the tortfeasor's coverage, the insured victim would be entitled to recover from the UIM carrier on the UIM claim, namely, in the amount of his actual damages or the UIM limit, whichever is less, reduced by the tortfeasor's coverage limits. At that point, whether or not the insured had yet received an offer from the tortfeasor, the ·UIM carrier could determine whether it wished to preserve a subrogation right against the tortfeasor. If it did, it could also pay its insured the tortfeasor's policy limit and itself prosecute the claim against the tortfeasor.
>
> [*Id.* at 193, 538 A.2d 414 (footnote omitted).]

Our attention has been called to a recent unreported decision of the Appellate Division that disagreed with the conclusion that the

six-year period provided in *N.J.S.A.* 2A:14–1 began to run for a UIM claim on the date of the accident. The court suggested that because *N.J.S.A.* 17:28–1.1e required the exhaustion of all available automobile insurance coverage, a claim might not arise on the date of the accident.

We believe, however, that once an automobile accident victim knows or has reason to know that a "target defendant" is underinsured, the contract permits the accident victim to make a UIM claim under the policy. A cause of action accrues because "there exists a claim capable of present enforcement." *Les Moise, Inc. v. Rossignol Ski Co.,* 122 *Wis.*2d 51, 361 *N.W.*2d 653, 656 (1985) (quotation omitted). Our cases hold that the arbitrator of UM benefits under the automobile policy is fully qualified to resolve issues of liability and coverage and thus to determine whether other auto insurance policies are available. In *Gold v. Aetna Life & Casualty Ins. Co.,* 233 *N.J.Super.* 271, 558 *A.*2d 854 (App.Div.1989), the court explained that when *N.J.S.A.* 17:28–1.1e speaks of "available" insurance coverage, it plainly refers to

> that of persons who are actual responsible tortfeasors and not that of those who may have been "involved" in the accident without being liable under the law. To rule otherwise would lead to the result that underinsured coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.
>
> [*Id.* at 276, 558 *A.*2d 854.]

In *Longworth, supra,* the Appellate Division held that "UIM carriers may, if they choose, honor demands from their insureds to proceed to arbitration of the UIM claim prior to disposition of the claim against the tortfeasor." *Longworth, supra,* 223 *N.J.Super.* at 195, 538 *A.*2d 414.

Thus, in this case, the fact that the perhaps entirely blameless but heavily insured Galex was involved in the accident should not deprive Green of his UIM benefits. This is the "practical common sense understanding of the term 'available' as used in *N.J.S.A.* 17:28–1.1e...." *Dickenson v. Indemnity Ins. Co.,* 276 *N.J.Super.* 72, 79, 647 *A.*2d 192 (Law Div.1994). In such circumstances,

"allowing arbitration to proceed so as to get compensation to an injured party while the carriers litigate as to which must ultimately pay is an appropriate goal...." *Id.* at 82, 647 *A.*2d 192 (citing *Parks v. Colonial Penn Ins. Co.,* 98 *N.J.* 42, 484 *A.*2d 4 (1984)).

One of the themes that we have stressed in our approach to the handling of UIM issues is that, to the greatest extent possible, we should attempt to tie up in one package all of the loose ends that are attendant to automobile-accident claims. In *Parks,* we applauded the aim of a "one-stop" proceeding whenever the interests of the parties were procedurally protected. *Parks, supra,* 98 *N.J.* at 49, 484 *A.*2d 4. Hence, although it is conceptually reasonable to state that a claim under a UIM policy does not arise until its rejection, we believe that it is more consistent with the goals and philosophy of UIM coverage that the claims be thought to arise at the time of the accident. In a somewhat analogous context, Craig and Pomeroy observe that UM claimants must raise their demand for arbitration within six years of the accident. Craig & Pomeroy, *supra, New Jersey Auto Insurance Law,* § 23:3–1(b), at 299.

We realize that there are many complexities in the wrap-up of such cases. In *Riccio, supra,* 108 *N.J.* at 505, 531 *A.*2d 717, the Court decided that it would "not address a number of problems that lurk in the fringes of the fact pattern before us." *See also Ainsworth, supra,* 284 *N.J.Super.* 117, 663 *A.*2d 1365 (holding that UIM insurance carriers are not compelled to arbitrate until *Longworth* conditions are satisfied). We believe, however, that the processing of the tort action and insurance claims should generally start at the same time. A corollary of this conclusion is that claimant's counsel should keep the UIM insurance company fully informed and alerted to the parallel handling of the automobile tort claim. A recent article in the *Automobile Insurance Reporter* is to this effect. *Uninsured and Underinsured Motorist Coverage,* 1 *Automobile Ins. Rep.* 26–27 (June 1995). The goal of this parallel management is that, to the maximum extent possible, we should achieve the aim of a "one-stop" proceeding. *Parks, supra,* 98 *N.J.* at 49, 484 *A.*2d 4.

■ In *Zirger v. General Accident Ins.*, 144 *N.J.* 327, 676 *A.*2d 1065 (1996), also decided today, we set forth as future policy that subject to proper notice, a contested trial of damages in the underlying tort suit will establish the value of the UIM claim. As the bar becomes more familiar with the different avenues for recovery, the entire process of automobile reparations may be expedited. In keeping with that philosophy, we believe that the statute of limitations on UM/UIM claims should run from the date of an accident. Were it otherwise, automobile cases might last, as here, eight or more years (two years for the personal injury statute of limitations and six years for the UM/UIM statute of limitations). That makes little sense. There should be more than enough time to resolve all the issues within six years. The more difficult question is whether our ruling should be given retroactive effect.

### III

"[T]he primary focus in resolving questions of retroactivity is with 'considerations of fairness and justice, related to reasonable surprise and prejudice to those affected.'" *Green v. Auerbach Chevrolet Corp.*, 127 *N.J.* 591, 600–01, 606 *A.*2d 1093 (1992) (quoting *New Jersey Election Law Enforcement Comm'n v. Citizens to Make Mayor–Council Gov't Work*, 107 *N.J.* 380, 388, 526 *A.*2d 1069 (1987)). *Auerbach* involved the interpretation of a statutory amendment that lowered the age of majority from twenty-one to eighteen. The issue was whether the amendment also reduced from twenty-one to eighteen the age until which the limitations periods were tolled. We held that in light of the persisting uncertainty about whether the age at which the limitations period tolled became eighteen or was still twenty-one, the interests of justice would be better served by the prospective application of the decision. *Auerbach, supra,* 127 *N.J.* at 601, 606 *A.*2d 1093 (citing *Accountemps v. Birch Tree Group,* 115 *N.J.* 614, 628, 560 *A.*2d 663 (1989)). Similarly, with respect to the issue of whether the statute of limitations on a claim for UIM benefits

begins to run on the date of the accident or on occasion of a breach of the insurance contract, there has been similar uncertainty. As noted, a recent unpublished Appellate Division decision reflects the belief that the statute of limitations begins to run when the right to bring the cause of action has accrued and that would not occur until the tort recoveries had been exhausted.

Because we are resolving for the first time the date on which the statute of limitations on UM/UIM claims begins to run, it is in the interest of "fairness and justice" to apply this holding prospectively. *See Auerbach, supra,* 127 *N.J.* at 601, 606 *A.*2d 1093. The benefit of this prospective ruling shall apply, however, only to other claims that have not expired within six months of the date of this decision.

## IV

The issue that remains is whether Selective was given late notice under the policy. In *Rutgers Casualty Insurance Co. v. Vassas, supra,* 139 *N.J.* 163, 652 *A.*2d 162, the claimant's insurance company never knew that there was a tort case pending, much less a claim for personal injuries. Here Selective knew that there were extensive injuries because there was a contest over PIP benefits paid to Green as a result of the accident, and Selective was fully aware of the extent of his injuries. We must presume that a cursory investigation would have disclosed the limits of Tingle's liability policy.

The Appellate Division affirmed the trial court's dismissal on the basis that the seven-year delay between the date of the accident and Green's claim against Selective for UIM benefits unfairly prejudiced Selective's subrogation rights. The Appellate Division relied on *Vassas* in reaching this result; however, *Vassas* is distinguishable.

In that case, Vassas, the policyholder, belatedly sought to enforce underinsured motorist provisions contained within his automobile liability policy. Vassas had been involved in an automobile accident with a vehicle driven by Andre Vold, an underin-

sured motorist. Shortly after the accident, Vassas notified Rutgers of collision damage to his vehicle, but never informed Rutgers of a possible personal injury claim. Vassas then filed a personal injury action against Vold without informing Rutgers. Following non-binding arbitration under *Rule* 4:21A–1(a)(1), Vassas was awarded, and accepted, Vold's policy limit of $15,000. On Vassas's motion, judgment was entered on the award, and Vassas gave Vold a satisfaction of judgment. *Id.* at 166, 652 *A.*2d 162.

Fifteen months later, Vassas asserted, for the first time, a claim against Rutgers for UIM benefits. We held that by failing to notify Rutgers of this claim until three years after the accident, and fifteen months after the judgment, Vassas had unfairly prejudiced Rutgers's subrogation rights against the underinsured motorist, contrary to the requirements of the policy. *Id.* at 170, 652 *A.*2d 162. By the time Vassas notified Rutgers of the suit, Rutgers was precluded from pursuing a subrogation claim against Vold. The satisfaction of judgment given by Vassas released Vold, the responsible party, of any liability. In addition, the two-year statute of limitations within which to sue Vold had expired. Because of the prejudice incurred, Rutgers was released of its obligation under the UIM provisions of Vassas's policy. *Ibid.*

In this case, the Appellate Division concluded that because "delay of three years from the date of the accident to assertion of a UIM claim resulted in unfair prejudice to the insurance carrier [in *Vassas* ], we are compelled to reach a similar conclusion here, [where] the policyholder delayed more than seven years." However, Green attempted to follow the *Longworth/Vassas* guidelines. In *Vassas* we said:

> If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the UIM insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the UIM insurer must further allow the insured the benefit of the UIM coverage.
>
> [*Vassas, supra,* 139 *N.J.* at 174–75, 652 *A.*2d 162.]

Green contacted Selective before he accepted a settlement, and Selective told him to exercise his own judgment with regard to accepting it. Selective could have paid Green the $2500 and taken over the case against Galex. Its subrogation rights were fully intact. In short, *Vassas* does not control this case. Although we note that no specific prejudice has been asserted, other than that Tingle has died, whether Selective has suffered prejudice on account of late notice must be determined by the trial court on a fuller assessment of the record. Tingle's testimony or his statements may have been preserved or be otherwise available to assess any comparative liability. *See Riccio, supra*, 108 *N.J.* 493, 531 *A.*2d 717 (explaining role of UM arbitrator in assessing comparative fault).

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for further proceedings in accordance with this opinion.

*For reversal and for remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

POLLOCK, J., concurring.

In *Zirger v. General Accident Ins. Co.*, 144 *N.J.* 327, 333, 676 *A.*2d 1065, 1068 (1996), also decided today, the Court recognizes that contract law governs the resolution of disputes about UM and UIM coverage. Consequently, a cause of action for UIM benefits does not accrue until the carrier breaches the contract, for example, by denying the benefits. *Allstate Ins. Co. v. Altman*, 200 *N.J.Super.* 269, 275, 491 *A.*2d 59 (App.Div.1984).

In the present case, recognizing the contractual nature of a UIM claim, the majority asserts that recovery of UIM benefits is "conceptually different from recovery in tort." *Ante* at 333, 676 *A.*2d at 1068. Curiously, however, the majority ignores the contractual nature of the claim in determining the event that starts

the running of the statute of limitations. *N.J.S.A.* 2A:14–1. Even more curiously, the majority concludes that the limitations period runs from the date of the accident, a conclusion that implicitly recognizes a UIM claim as sounding in tort. Yet, the majority rejects the proposition that an insured's right of action against the UIM carrier stems from the tort claim against the tortfeasor. *Ibid.*

Although the majority does not expressly say so, it solves the riddle by asserting that the Legislature apparently intended that the statute of limitations on the contract claim starts to run on the date of the accident. *Ante* at 350, 676 *A.*2d at 1078. Significantly, it cites no statutory language or history to support its assertion.

Instead, the majority simply refers to the legislative policy to "'provide expeditious protection to the innocent victims of financially irresponsible motorists.'" *Ante* at 351, 676 *A.*2d at 1078 (quoting *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 184, 538 *A.*2d 414 (App.Div.1988)). Missing from the opinion is an explanation how the majority furthers that protection by measuring the right of claimants to sue from the date of the accident, rather than from the date of the denial of UIM benefits.

The majority's requirement that a claimant must bring an action on a UIM claim within six years from the accident date does not protect accident victims. Existing case law, in contrast, protects those victims by permitting the assertion of UIM claims before the determination of tort actions. *See Rutgers Casualty Ins. Co. v. Vassas,* 139 *N.J.* 163, 171, 174, 652 *A.*2d 162 (1995) (adopting *Longworth*); *Longworth, supra,* 223 *N.J.Super.* at 193, 195, 538 *A.*2d 414 (stating that an insured may seek arbitration of UIM benefits before resolution of underlying tort action). No similar salutary effect follows from requiring an insured to file a premature claim for UIM benefits.

Implicit in the majority opinion is an awareness that an insured may not know on the date of the accident that a potential tortfeasor is underinsured. *Ante* at 351, 678 *A.*2d at 1078. In

such a case, it hardly seems fair to measure the insured's right to sue from that date.

Most claimants will have an economic incentive to file timely claims for UIM benefits. UIM claimants are already obligated to notify carriers of accidents and of ensuing litigation. "If, during the pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages, then the insured should again notify the UIM insurer of that fact." *Vassas, supra,* 139 *N.J.* at 174, 652 *A.*2d 162. Additionally, the insured must notify the UIM insurer of any settlement offer or arbitration award that does not completely satisfy the claim because the tortfeasor is underinsured. *Ibid.* Finally, insurance carriers can protect themselves by including in their policies time limits for filing UIM claims. Under existing law, moreover, insurers can require insureds to file timely claims. Thus, present law balances an insured's right to file a UIM claim within six years of the insurer's breach of the contract with the correlative duty to provide the insurer with reasonable notification of the status of the underlying tort action. That strikes me as a fair and reasonable accommodation of the respective rights of the parties. I would leave to the Legislature a more marked accommodation.

My further concern is that the majority, to provide what it perceives to be a more practical procedure for UIM claims, has unintentionally sacrificed doctrinal consistency for practicality. Established contract law supports the same result as that reached by the majority, that Green may pursue his suit against Selective. Thus, my difference with the majority is not the result but the means it uses to reach that result. Public acceptance of the judiciary depends not only on results of judicial decisions, but on the means courts use to reach those results. Regrettably lacking from the majority opinion is any reason for the result reached other than the majority's desire to reach that result.

I also believe that the majority misplaces its reliance on a leading automobile-insurance text, Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law,* § 23:3–1(b), at 299

(1996). According to the majority, "[i]n a somewhat analogous context, Craig & Pomeroy observe that UM claimants must raise their ·demand for arbitration within six years of the accident." *Ante* at 353, 676 *A*.2d at 1079. The majority opinion, however, omits any reference to the statement in the next paragraph of Craig & Pomeroy's treatise:

> It is noteworthy that suit against an insurer for breach of the contractual obligation to arbitrate a UM claim is timely when brought within six years of the insurer's refusal to arbitrate. In that regard, the six-year limitation period does not begin to run until the insurer rejects the UM claimant's arbitration demand.
>
> [Craig & Pomeroy, *supra*, § 23:3–1(b), at 299.]

Although Craig & Pomeroy recognize the benefit of encouraging insureds to file timely claims for benefits, they also recognize that the denial of such claims is a breach of contract that starts the running of the six-year statute of limitations under *N.J.S.A.* 2A:14–1.

To the extent that the majority opinion may be read to propose that the underlying tort action and the claim for UIM benefits should be adjudicated in one proceeding, *ante* at 352, 676 *A*.2d at 1079, no one at any stage in these proceedings—not the parties, the Law Division, or the Appellate Division—has suggested that proposal. At a minimum, I would permit the parties to comment on the proposal before writing it into the law of the State. That practice would include the parties in the process and provide the Court with the benefit of their thinking.

In sum, the six-year statute of limitations did not begin to run until Selective breached its contract by denying Green's claim for UIM benefits. That denial occurred in February, 1993. Thus, the limitations did not expire on Green's claim before he instituted this action.

Justice STEIN joins in this concurrence.