688 A.2d 679

VINCENT NORCIA, ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF LIVIO A. NORCIA, DECEASED, PLAINTIFF, v. LIBERTY MUTUAL INSURANCE COMPANY AND NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided October 21, 1996.

*Vincent P. Manning* and *Richard J. Mohr* argued the cause for plaintiff (*Schottland, Manning & Rosen,* attorneys; *Richard J. Mohr* and *Vincent P. Manning,* on the brief).

*Narinder S. Parmar* argued the cause for defendants Liberty Mutual Insurance Company and New Jersey Automobile Full Insurance Underwriting Association (*Seller, Richardson, Stuart &*

*Chisholm,* attorneys; *Anthony C. Stuart,* of counsel; *James P. Richardson* and *Narinder S. Parmar,* on the brief).

KOCH, J.S.C.

On August 9, 1996, and again on September 27, 1996, this court heard oral argument on a motion for summary judgment brought by defendant Liberty Mutual Insurance Company. The court also heard oral argument on a cross-motion for summary judgment brought by plaintiff Vincent Norcia, as Administrator of the Estate of Livio A. Norcia, deceased. Liberty Mutual's motion for summary judgment is Granted. Norcia's cross-motion for summary judgment is Denied.

FACTUAL SUMMARY:

On February 14, 1988, the decedent Livio Norcia was struck and killed by Henry S. Santiago, an employee of the Drug Enforcement Administration (DEA) at the time of the accident. Santiago was driving a United States Government-owned vehicle. The U.S. early on disclaimed responsibility. Santiago was apparently using the car on his own business. This vehicle is listed as "self-insured" in the police lists.

Santiago was intoxicated at the time of the accident and charged with death by auto and driving while intoxicated. On April 28, 1988, he pled guilty to one charge of death by auto and to the charge of driving while intoxicated.

Vincent Norcia brought an action against Santiago and the Centro Orensano Social Club, where Santiago had been drinking. A default judgment for $350,000 was entered against Santiago. The action against the Social Club was settled for $7,500.

On April 18, 1988, Norcia filed a claim for administrative settlement with the DEA. The DEA failed to make a final disposition of this claim within six months, finding that Santiago was acting outside the scope of his employment when the accident occurred. Norcia then filed a complaint against the federal government in the U.S. District Court for New Jersey. On March 3,

1993, the DEA and Norcia settled this claim for $80,000. Included in this settlement was a stipulation stating that the settlement agreement did not constitute an admission of liability or fault on the part of the defendant or any of defendant's agents, servants, employees, or instrumentalities on account of the incidents giving rise to the action.

In force on the day of the accident was an insurance policy, issued by the N.J.A.F.I.U.A. and serviced by defendant Liberty Mutual, which provided Norcia with $300,000 of uninsured motorist (UM) coverage. Under this policy, the insured has a duty to promptly notify Liberty Mutual of "how, when and where the accident or loss happened." The insured must also cooperate in the defense or prosecution of any action by or against the tortfeasor. Furthermore, the insured is required to forward any "legal papers" filed or received in connection with any litigation arising from an accident. Finally, UM coverage for bodily injury is not provided if the injured person settles the claim without Liberty Mutual's consent.

Norcia did not notify Liberty Mutual of the underlying claim or Norcia's intention to seek recovery under its UM policy until around February 9, 1990. Furthermore, Norcia did not notify Liberty Mutual or obtain its authorization before settling with the U.S. Government.

On June 15, 1994, more than six years after the date of the accident, Norcia sent Liberty Mutual a letter informing them of a change of counsel, naming an arbitrator and requesting that Liberty Mutual name its own arbitrator. Liberty Mutual marks this letter as Norcia's first formal request for arbitration made to Liberty Mutual. On August 19, 1994, Norcia's arbitrator sent a letter to Liberty Mutual supplying the names of potential neutral arbitrators.

On December 12, 1994, Liberty Mutual sent a letter to Norcia inquiring as to whether Norcia was still pursuing a UM claim against them. On March 7, 1995, Norcia indicated his intent to pursue his claim and again requested designation of an arbitrator.

On March 22, 1995, Liberty Mutual indicated that it would not appoint a UM arbitrator. On October 24, 1995, Norcia once again requested designation of an arbitrator and, receiving no response, filed the complaint at issue in these summary judgment motions.

DISCUSSION:

■ The first issue for consideration is whether the six-year statute of limitations under *N.J.S.A.* 2A:14–1 bars plaintiff's claim. In *Green v. Selective Ins. Co. of America,* 144 *N.J.* 344, 676 *A.*2d 1074 (1996), the Supreme Court of New Jersey ruled that the statute of limitations on claims for uninsured motorist benefits runs from the date of accident, rather than the date of any breach of policy. As to the timing of this new rule's application, the Court stated:

> Because we are resolving for the first time the date on which the statute of· limitations on UM/UIM claims begins to run, it is in the interest of "fairness and justice" to apply this holding prospectively. The benefit of this prospective ruling shall apply, however, only to other claims that have not expired within six months of the date of this decision. [The date the decision was published was June 12, 1996].
>
> *Green,* 144 *N.J.* at 355, 676 *A.*2d at 1080 (citation omitted).

This court interprets the above statement to mean that potential claimants whose otherwise viable cause of action would now be considered expired under *Green*'s new rule, or whose claim under the new rule would expire within six months of the *Green* decision, now have a six month window (beginning June 12, 1996) in which to file their claim. This is presuming, of course, that such a claim could be filed within that time period under the pre-*Green* rule.

■ The accident at issue in the present case occurred on February 14, 1988. Under the new rule in *Green,* therefore, plaintiff's claim would have become time-barred on February 14, 1994. Therefore, plaintiff's claim falls within the exception to *Green* and is unaffected by the new rule from that case.

■ This does not, however, end the inquiry. Plaintiff must still establish that his claim is not time-barred under the pre-*Green* rule, which states that a cause of action for breach of contract in UM cases occurs when the insurer actually breaches.

The breach in this case occurred on March 22, 1995, the date of Liberty Mutual's letter refusing to appoint an arbitrator.

Therefore, plaintiff's claim is well within the applicable statute of limitations period.

■ The second issue for consideration is the status of the car driven by Santiago on the date of the accident. Liberty Mutual claims that the car is not covered by its policy because it is not an "uninsured motor vehicle." According to *N.J.S.A.* 17:28–1.1(e)(2), an uninsured motor vehicle "shall not include ... a motor vehicle which is owned by the United States ...".

The Appellate Division in *Tozzo v. Universal Underwriters,* 261 *N.J.Super.* 586, 591, 619 *A.*2d 639, 642 (App.Div.1993), stated that:

> the statutory exclusion of 'a motor vehicle ... owned by the United States' from the definition of 'uninsured motor vehicle' should be understood to refer to a motor vehicle owned by the United States only in a case in which the United States has not denied that it would be vicariously liable for damages which have resulted from the driver's tort.

In the present case, the United States made an $80,000 settlement payment to the plaintiff. Part of the settlement agreement expressly states that the agreement does not constitute an admission of liability or fault on the part of the United States or any of its agents. Whether the vehicle Santiago was driving is an "uninsured motor vehicle" under the applicable statute therefore depends on whether the government's $80,000 settlement, despite the express denial of liability, is a sufficient admission of fault to convert the vehicle driven by Santiago into a motor vehicle "owned" by the United States.

This court finds that, while the $80,000 settlement payment by the United States to Norcia is not an outright admission of liability, it is certainly an indicia of such. By paying $80,000 to settle the case against itself, the United States has made a tacit admission that vicarious liability may exist. Unlike in *Tozzo,* where there was no settlement payment by the United States, the car Santiago was driving should be excluded from the definition of "uninsured motor vehicle." Settlement with plaintiff by the Unit-

ed States is inconsistent with the denial of liability required under the *Tozzo* standard.

The court is aware of the consequences of such a ruling: prospective plaintiffs who intend to recover under their UM policies should be wary of settling with the United States because such settlement would likely convert an otherwise uninsured motor vehicle into an insured vehicle; such settlement indicates sufficient "ownership" under *N.J.S.A.* 17:28–1.1(e)(2).

However, the present ruling is in accord with the two purposes for requiring uninsured motorist coverage. As the court in *Tozzo* explained:

> The New Jersey legislature had two purposes for requiring uninsured motorist coverage in every automobile liability policy insuring an automobile registered or principally garaged in new Jersey. The first purpose was to reduce the amount of claims against the Unsatisfied Claim and Judgment Fund. The second was to protect persons injured in motor vehicle accidents from being unable to obtain compensation because their tortfeasors were uninsured, financially irresponsible drivers.
>
> [261 *N.J.Super.* at 590, 619 *A.2d* at 641 (citations omitted)].

The first purpose is clearly met: because Norcia's policy included uninsured motorist coverage, he is disqualified from obtaining any recovery from the Unsatisfied Claim and Judgment Fund. *See N.J.S.A.* 39:6–62.

The second purpose is also left intact by this court's ruling. Plaintiff is not deprived of compensation simply because the tortfeasors were uninsured, financially irresponsible drivers. Besides the option of suing Mr. Santiago, plaintiff had the choice of either making a claim under his UM policy or bringing suit against the United States. Today's ruling merely preempts plaintiff from accusing the United States of vicarious liability and then, after obtaining settlement from the government, making a claim against his own insurance company on grounds that the United States has no liability and therefore does not "own" the vehicle.

Because the United States is self-insured, its ownership, as evidenced by the $80,000 settlement, defeats a claim that the vehicle is an "uninsured motor vehicle." The court agrees with

defendants: because the vehicle driven by Santiago was self-insured by the United States, "the fact that the driver was uninsured does not turn it into an 'uninsured motor vehicle.'" Such a holding would put at risk any driver unfortunate enough to be struck by an uninsured driver, regardless of the whether the vehicle itself is insured.

Therefore, Liberty Mutual's motion for summary judgment must be granted and Norcia's motion for summary judgment denied.

Because the above findings warrant dismissal of plaintiff's claim, the court does not address the remaining issues raised by the parties.