**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2543-20

SHARON BARNICK and
GEORGE BARNICK, h/w,

      Plaintiffs-Respondents,

v.

CRAIG KOBRIN, ESQ.,
EDWIN CINTRON, II, ESQ.,
LORD, KOBRIN,
ALVAREZ & FATTELL, LLC,

      Defendants-Appellants,

and

NEW JERSEY
MANUFACTURERS
INSURANCE COMPANY,

      Defendant-Respondent.

_____

Argued September 15, 2021 – Decided October 13, 2021

Before Judges Messano, Accurso, and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3820-19.

Christian M. Scheuerman argued the cause for appellants (Marks, O'Neill, O'Brien, Doherty & Kelly, attorneys; Robert A. Lord and Christopher L. Morbelli, on the brief).

Anita L. Pitock argued the cause for respondents Sharon and George Barnick (Lowenthal & Abrams, PC, attorneys; Dennis Abrams and Anita L. Pitock, on the brief).

Daniel J. Pomeroy argued the cause for respondents New Jersey Manufacturers Insurance Company (Pomeroy, Heller, Ley, DiGasbarro & Noonan, LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the brief).

PER CURIAM

This litigation had its genesis with a May 19, 2011 motor vehicle accident, which allegedly resulted in injuries to plaintiffs Sharon and George Barnick. Defendants Craig Kobrin, Edwin Cintron II, and Lord, Kobrin, Alvarez & Fattell, LLC (the Kobrin defendants or the Kobrin firm), represented plaintiffs, and New Jersey Manufacturers Insurance Company (NJM) insured the Barnick's vehicle at the time. After obtaining NJM's approval and settling plaintiffs' claim with the other driver for her policy limits, the Kobrin firm failed to seek arbitration of plaintiffs' underinsured motorist (UIM) claim or file a complaint

2

asserting a UIM claim within the applicable six-year statute of limitations (SOL). See Green v. Selective Ins. Co. of Am., 144 N.J. 344, 354 (1996) (applying six-year statute of limitations to underinsured motorist claims and holding that the statute begins to run from the date of the accident).

Plaintiffs filed this suit alleging malpractice by the Kobrin defendants and asserting a UIM claim under the policy against NJM. After discovery, all parties filed summary judgment motions. The judge entered three orders on March 11, 2021: 1) denying the Kobrin defendants' motion for summary judgment; 2) granting summary judgment to NJM, dismissing plaintiffs' complaint and the Kobrin defendants' crossclaim; and, 3) granting plaintiffs summary judgment as to liability on their malpractice claim against the Kobrin defendants. Specifically, the judge rejected the Kobrin defendants' contention that NJM's conduct resulted in the equitable tolling of the SOL pursuant to Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519 (2005). We granted the Kobrin firm leave to appeal and now affirm.

I.

We limit our review to the record before the motion judge. See Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000) (holding appellate review of the grant of summary judgment is limited to the record that existed before the

motion judge (citing <u>Bilotti v. Accurate Forming Corp.</u>, 39 N.J. 184, 188 (1963))).[1]

In January 2013, NJM acknowledged the Kobrin firm's <u>Longworth</u>[2] notice, advising of a proposed settlement with the other driver involved in the accident for her policy limits of $15,000, and plaintiffs' UIM claim under their policy, which included a $300,000 UIM limit. Within days of receiving plaintiffs' medical records, NJM sent the Kobrin firm approval of the proposed settlement with the other driver.

---

[1] After the appeal was calendared and shortly before argument, NJM brought to our attention that plaintiffs failed to comply with <u>Rule</u> 2:6-1(a)(1), which requires when the appeal is "from a disposition of a motion for summary judgment, the appendix . . . include a statement of all items submitted to the court on the summary judgment motion and all such items shall be included in the appendix," except for briefs filed with the Law Division. Plaintiffs failed to include a statement of items and, purportedly, some items in the record before the motion judge. We permitted plaintiffs' counsel the opportunity to submit a supplemental appendix within two weeks. Counsel failed to do so, instead, seeking by letter an additional two weeks. Respondents' counsel did not consent.

We refused the request for further time to submit what should have been submitted in the first instance and decide the appeal on the record supplied. We are confident that any omissions do not impede in any way our consideration of the merits of the appeal.

[2] <u>Longworth v. Van Houten</u>, 223 N.J. Super. 174 (App. Div. 1988).

There were multiple written contacts between the Kobrin firm and NJM throughout the remainder of 2013, most involving NJM's attempts to secure Mrs. Barnick's medical records and to schedule an independent medical examination (IME). In 2014, NJM sent eight letters to the Kobrin defendants seeking an update on plaintiffs' conditions and informing the firm of the need for IMEs before plaintiffs' UIM claims could proceed. In two of those letters, NJM advised that it needed medical records from one of Mrs. Barnick's doctors to process the UIM claim. There was one response from the Kobrin firm, dated June 12, 2014, enclosing medical records of Mrs. Barnick's prior surgery.

Between January 29 and August 1, 2015, NJM's adjuster sent six letters to the Kobrin firm requesting updates and advising that NJM required plaintiffs to undergo IMEs when their treatment was completed. The NJM adjuster sent another letter on November 3, 2015, which sought updates on plaintiffs' conditions and asked that any additional medical bills and reports be forwarded to NJM.

The record indicates that the Kobrin defendants assigned defendant Edwin Cintron II to plaintiffs' file in 2016. NJM sent two letters on February 5 and May 6, 2016, seeking an update and any additional medical records for plaintiffs. On June 14, 2016, Cintron sent a letter to NJM enclosing Mrs.

5

Barnick's medical records and adding, "Kindly call my office to discuss possible settlement." On August 1, 2016, Cintron gave NJM permission to schedule the IMEs. In October and again in December 2016, NJM advised Cintron that the doctor who had performed the IMEs needed additional medical records.

The record does not include any written communication from the Kobrin firm in 2017. On February 10, 2017, the newly-assigned NJM adjuster sent Cintron a letter restating NJM's request for additional medical records and a signed release between plaintiffs and the other driver. The record does not include any response from the Kobrin firm. The SOL expired on May 19, 2017.

Nonetheless, NJM continued to call the Kobrin firm regarding the requested records for several months that followed. According to file notes, NJM's adjuster spoke with defendant Kobrin on September 8, 2017, again requesting additional information and documents; he advised that he would fax them to the adjuster, but they were never sent.

In an affidavit supporting plaintiffs' motion, Mrs. Barnick stated Kobrin called her in April or May 2018. He informed her the firm failed to file a claim within the six-year SOL and advised her that she should sue him for malpractice.

The record includes excerpts from Kobrin's and Cintron's depositions. Cintron admitted being aware of the six-year SOL. He believed that before he

received the file, someone in the firm made a demand for the policy's UIM limits on behalf of plaintiffs. He left the firm two weeks before expiration of the SOL and believed someone would file a complaint within that time.

Kobrin confirmed during his deposition that he demanded the policy limit to settle plaintiffs' UIM claim. Kobrin said it was evident upon seeing NJM's case notes that the company never intended to make an offer because NJM referred Mrs. Barnick's case to the "Office of Fraud Investigators" without notifying the firm. Kobrin acknowledged being unaware "of the Price case before" plaintiff terminated his firm's continued representation of their interests. He did not file a claim before the SOL ran because "[b]oth sides were working on a resolution of the case. . . . It's my understanding an offer was going to be presented . . . ." Kobrin acknowledged that NJM never "lulled" him into believing it would negotiate a settlement after the statute of limitations expired, however, he "believed" the company's continued requests for medical records "would make anybody believe that they were going to present an offer."

After considering oral arguments, Judge Bruce J. Kaplan aptly noted the issue was whether "this was a case of attorney malpractice or whether . . . it fits into the narrow exception of Price." The judge extensively reviewed the facts in Price and concluded the facts here were "significantly different." He noted

7

that NJM sent seventeen letters to the Kobrin firm "requesting different medical reports, films [and] authorizations, in order to be able to move this file forward." Judge Kaplan noted the last communication from the Kobrin defendants was June 2016, nearly a year before the statute expired, when Cintron forwarded some medical records. The judge observed that those records "were years old," and the Kobrin firm failed to obtain "current medical records . . . for years prior to the running of the statute of limitations." The judge found NJM's letters "were ignored."

Judge Kaplan further concluded that unlike the facts in Price, "where there were ongoing negotiations," here, "NJM was not in a position to make an offer because . . . [it was] not able to even obtain [its] own IME." The judge noted Cintron's deposition testimony, in which he acknowledged being aware of the SOL that was set to expire within two weeks of Cintron's departure from the Kobrin firm. However, nothing in Cintron's testimony indicated "any offer [from NJM] was forthcoming."

The judge also cited Kobrin's deposition testimony, and his handwritten May 2016 note in the firm's file, in which Kobrin urged an associate to "[p]lease organize this . . . 'shit-show' of a file. Ultimate goal is to squeeze a few dollars from NJM and moving on with lives." Judge Kaplan noted that in September

8

2017, after the statute expired, Kobrin told NJM that he believed a complaint had in fact been filed. The judge concluded this belied any assertion that the Kobrin firm purposely failed to file the complaint because it reasonably believed a settlement offer was imminent. Further, the judge rejected the Kobrin defendants' claim it was "black letter law" that NJM was obliged to notify plaintiffs they must seek arbitration under the policy within the statutory period. The judge entered the orders under review.

## II.

Before us, the Kobrin defendants argue Judge Kaplan erred because NJM violated its "elevated duty of good faith and fair dealing." Specifically, they contend NJM failed to advise plaintiffs "of their right to demand [a]rbitration" under the policy, nor did NJM advise the firm of its "numerous questions regarding . . . coverage."

NJM counters by arguing Judge Kaplan correctly concluded there were no genuine factual disputes regarding any circumstances supporting "equitable tolling" of the SOL. Plaintiffs contend the Kobrin defendants were not "lulled" into believing they did not have to file a complaint on plaintiffs' behalf; additionally, plaintiffs argue that the Kobrin firm was fully aware, soon after the

9

accident, that NJM questioned whether Mrs. Barnick's injuries resulted from the accident or were pre-existing.

We review the grant of summary judgment de novo, applying the same standard used by the trial court, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

"'If there is no genuine issue of material fact,' then we must 'decide whether the trial court correctly interpreted the law.'" Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 412 (App. Div. 2019) (quoting DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App.

10

Div. 2013)). Additionally, "[w]e accord no deference to the trial judge's legal conclusions." Ibid. (citing Nicholas v. Mynster, 213 N.J. 463, 478 (2013)).

In Price, the plaintiff, a pedestrian struck by a motor vehicle, maintained an automobile insurance policy with NJM. 182 N.J. at 521. When the driver's insurer denied coverage, the plaintiff made an uninsured motorist (UM) claim under his policy. Id. at 522. The plaintiff's counsel provided NJM with his client's medical records and information on a workers' compensation lien; he instituted suit against the other driver to preserve NJM's subrogation rights. Ibid. The plaintiff's counsel responded to NJM's repeated requests for further information and medical records; the plaintiff submitted to an IME at NJM's request. Id. at 522–23.

After the SOL expired, the plaintiff's attorney continued to supply additional information and demanded NJM evaluate the file for settlement purposes. Id. at 523. NJM never responded to any of counsel's correspondence. Ibid. When the plaintiff filed suit seeking to compel arbitration, NJM argued it was not required to participate because the plaintiff never filed a formal request to arbitrate prior to expiration of the SOL. Ibid.

The Court recognized that "every insurance contract contains an implied covenant of good faith and fair dealing." Id. at 526 (citing Sears Mortg. Corp.

11

v. Rose, 134 N.J. 326, 347 (1993); Griggs v. Bertram, 88 N.J. 347, 360–61 (1982)).  The Court held:

> In dealing with plaintiff, NJM was required to act in a fair manner and inform plaintiff if there were any deficiencies in his claim or if he needed to file a request for arbitration by a certain date.  It was not reasonable for NJM to sit back, request and receive various documents over a three[-]and[-]one-half[-]year period, and then deny plaintiff's claim because he failed to file a complaint in Superior Court or request arbitration prior to the running of the six-year statute of limitations.  We agree . . . that NJM had a duty of good faith to notify plaintiff if it disagreed with his understanding that NJM was duly acting upon his filed claim.  We conclude that NJM violated the duty of good faith and fair dealing.
>
> [Id. at 526 (internal citations omitted).]

The Court concluded that NJM's conduct "lulled [the] plaintiff and his counsel into believing that the [UM] claim had been properly filed[, and p]laintiff reasonably relied on NJM's conduct in failing to file a complaint or to request arbitration within the [SOL] period."  Id. at 527.

We agree with Judge Kaplan's analysis that the facts of this case are completely distinguishable from those presented in Price, both as to NJM's conduct and the Kobrin firm's abdication of its obligation to plaintiffs.  Furthermore, as Judge Kaplan noted, the deposition testimony of the Kobrin defendants established a clear understanding that the SOL was approaching, the

12

apparent mistaken belief that a complaint was filed, and an admission that plaintiffs' recourse was to sue the firm for malpractice. As the Court has recognized since Price was decided, "[w]ith regard to procedural and substantive statutes of limitations, . . . the doctrine of equitable tolling of limitations periods has been applied only in narrowly-defined circumstances." R.A.C. v. P.J.S., Jr., 192 N.J. 81, 100 (2007). Such circumstances do not exist in this case.

We also agree with Judge Kaplan's rejection of the Kobrin defendants' claim that Price obligated insurers to affirmatively advise their insureds and their attorneys that they were required to demand arbitration within the six-year SOL, and failure by the insurer to do so would result in it being equally estopped from relying on the SOL. There is, simply put, no such affirmative duty placed on insurers by Price or any other reported opinion.

Finally, as plaintiffs point out, the Kobrin defendants were fully aware as early as October 2011, that NJM denied personal injury protection (PIP) benefits to Mrs. Barnick for treatment of injuries to her knees, concluding they were not causally related to the accident. Indeed, the dispute over whether NJM had to make PIP payments for treatment of Mrs. Barnick's knees was eventually heard

by a Dispute Resolution Professional (DRP); NJM prevailed.[3]  Moreover, although NJM referred the claim for investigation as to fraudulent conduct, the record demonstrates that by September 2013, years before the SOL expired, NJM concluded there was no fraud, and the UIM claim "should be adjusted in the normal manner."  NJM's conduct of investigating plaintiffs' claims did not justify the extraordinary remedy of equitable tolling of the SOL.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3]  Plaintiffs assert, without citing anything in the record, that the Kobrin firm represented them before the DRP.